ANN VREDEVELD, APPELLANT, V. GELCO EXPRESS, APPELLEE.

383 N.W.2d 780

Filed March 28, 1986. No. 85-345.

Gwyer Grimminger of Grimminger Law Office, for appellant.

Kenneth H. Elson, for appellee.

BOSLAUGH, WHITE, and SHANAHAN, JJ., and BRODKEY, J., Retired, and COLWELL, D.J., Retired.

SHANAHAN, J.

Ann Vredeveld appeals the dismissal of her petition on rehearing in the Nebraska Workmen's Compensation Court. We affirm.

In October 1983 Vredeveld was employed as a route driver for Gelco Express in Grand Island and was responsible for loading and unloading various items of freight ranging in weight from ½ to 200 pounds. On October 14, 1983, Vredeveld was attempting to load a 175-pound gas tank onto her truck when she suffered "sharp pains" in her "right side." Vredeveld completed the route but, later that day, notified her supervisors of her injury and requested to be temporarily replaced. Gelco refused to grant temporary leave, and Vredeveld continued to drive her route. On October 25 Vredeveld saw her family physician, Dr. Sheridan Anderson, who diagnosed Vredeveld as suffering from an "acute muscle sprain" of the right abdominal muscle, known in medical parlance as the "abdominis rectus." Anderson recommended that she "stay off work and do no lifting."

Vredeveld left her employment with Gelco and continued to

see Dr. Anderson for treatment. As a result of the injury, Gelco paid Vredeveld benefits for temporary total disability and also paid Vredeveld's medical expenses. When her temporary disability payments were discontinued on May 13, 1984, Vredeveld filed a petition in the Nebraska Workmen's Compensation Court claiming "permanent partial disability" resulting from the injury sustained October 14, 1983. In its answer Gelco admitted that Vredeveld had sustained "strained stomach muscles arising out of and in the course of her employment by [Gelco]" but denied Vredeveld's alleged "permanent partial disability as a result of the strained stomach muscles."

At the rehearing, Vredeveld described the circumstances surrounding the accident and residual effects of the injury. In particular, Vredeveld described the pain she felt when she carried an item "of any weight at all": "I have pain in my right side. It starts burning, [I] get muscle spasms. If I do anything that is very strenuous then the left side will pick up on the same thing." Vredeveld also testified, however, that the symptoms were "not as bad now as they were at the time of the accident."

Prior to the rehearing, Vredeveld was examined, at Gelco's request, by Dr. John G. Yost and Dr. A.E. Van Wie. On her own initiative Vredeveld had continued to see Dr. Anderson periodically and had also consulted Dr. Barton Hultine, a self-employed "rehabilitation specialist and vocational expert." Apart from Vredeveld's testimony, the evidence presented to the three-judge panel consisted solely of the observations and conclusions of the four doctors.

Dr. Anderson is a general practitioner in Grand Island and was Vredeveld's family doctor for a few years prior to his initial diagnosis of Vredeveld's abdominal injury. Anderson testified that Vredeveld had been "disabled from her work" at the time of the initial examination and had continued to suffer "much of the restrictions in her activity that she had at the beginning." In Anderson's opinion Vredeveld was burdened with a "degree of disability that would preclude her ability to work at a variety of jobs," including "the kind of work she was doing before," for a period of possibly 10 or more years. Although he was not familiar with any manner of fixing a percentage of disability,

Anderson testified that if the percentage was based on the kind of work Vredeveld performed for Gelco, her disability was 100 percent.

During cross-examination, Anderson conceded that his conclusions were based solely on Vredeveld's "subjective complaints" and noted that in this kind of case, "where you can't look at a lab report, . . . it's all judgment." Anderson also admitted that his office notes and records indicated that Vredeveld's condition had gradually improved from November 1983 to March 1984, culminating in his notation on March 14, 1984, that the tenderness was "less" in the abdominal region.

Dr. Hultine also testified on Vredeveld's behalf and recited the findings of his "examination" conducted on March 7, 1985. Hultine has a doctorate in vocational rehabilitation from the University of Western Colorado but has no "medical background" and no "skill in making any medical determination." Hultine's examination consisted of reviewing the medical findings of Anderson and conducting a brief test of Vredeveld's ability to move, stretch, and bend. Hultine observed that Vredeveld was "unable to carry more than ten pounds without discomfort," was "very restricted in her ability to bend, to squat, to crawl or to climb," and concluded that her future employment was restricted to something "sedentary" in nature.

To rebut testimony from Anderson and Hultine, Gelco offered the testimony of Dr. Yost and Dr. Van Wie. Yost, a specialist in orthopedic surgery, examined Vredeveld on April 26, 1984. After listening to Vredeveld's history concerning the injury, Yost took x rays of Vredeveld's dorsal spine, chest, and left shoulder and had her exercise her various joints "through the entire range of motion." During the exercise portion of the examination, Vredeveld, when prompted by Yost, complained of tenderness in her abdominal region but, nevertheless, was able without complaint "to bend over and touch her toes with rhythmic motion." Based upon the one examination, Yost felt that Vredeveld's "subjective complaints were far, far greater than any objective findings" and concluded that she had initially sustained a "sprain of her abdominal muscles" that should have taken a "maximum of about six weeks" to heal.

Accordingly, Yost also felt that Vredeveld could "probably perform any and all types of work she so desired."

On cross-examination Yost was asked to reconcile an apparent discrepancy in his testimony, namely, how he could, more than 7 months after the incident, diagnose Vredeveld as suffering from a sprained abdominal muscle, while stating that any such sprain should have been healed within 6 weeks of the accident. Yost explained that he had found no objective indication that Vredeveld was suffering from a sprain as of April 1984 but had simply "assumed she had a sprain and gave her the benefit of the doubt, by believing what she told [him]." Although conceding that it would be virtually impossible to detect objective signs of a sprained muscle more than 7 months after the initial sprain, Yost stated: "I didn't think she had anything when I examined her. I thought she'd have been back to work. I could see no reason that this woman had any injury at the time I saw her that would keep her from working."

Dr. Van Wie, a surgeon, examined Vredeveld on January 14, 1985, and could not find "any basis" for Vredeveld's "complaint of pain in her abdominal area." Although he did not actually make a diagnosis, explaining, "I saw her late, after the fact," Van Wie commented: "I don't know when this so-called injury occurred, but she had nothing I could base any injury on at this time, other than some subjective complaints." Van Wie also noted that Vredeveld's "abdominal musculature was better than the average female for that age."

On April 16, 1985, the three-judge panel dismissed Vredeveld's petition, resolving the "irreconcilable medical testimony" in Gelco's favor and finding that Vredeveld was not entitled to compensation for permanent partial disability but "ha[d] received all to which she [was] entitled to as a result of [the] accident." Vredeveld claims that the court's judgment is "contrary to [the] evidence."

> Factual determinations by the Workmen's Compensation Court will not be set aside on appeal unless such determinations are clearly wrong. [Citations omitted.] Regarding facts determined and findings made upon rehearing in the Workmen's Compensation Court, § 48-185 precludes the Supreme Court's substitution of its

view of facts for that of the Workmen's Compensation Court if the record contains evidence to substantiate the factual conclusions reached by the Workmen's Compensation Court.

*Gibson v. City of Lincoln*, 221 Neb. 304, 314, 376 N.W.2d 785, 791-92 (1985) (citing and quoting from *Thompson v. Monfort of Colorado*, 221 Neb. 83, 375 N.W.2d 601 (1985)). See, also, Neb. Rev. Stat. § 48-185 (Reissue 1984). " 'In testing the sufficiency of evidence to support findings of fact made by the Nebraska Workmen's Compensation Court after rehearing, the evidence must be considered in the light most favorable to the successful party.' " *Paris v. J. A. Baldwin Mfg. Co.*, 216 Neb. 151, 154, 342 N.W.2d 198, 200 (1984). "Where the record presents nothing more than conflicting medical testimony, this court will not substitute its judgment for that of the compensation court." *Doty v. Aetna Life & Casualty*, 217 Neb. 428, 435, 350 N.W.2d 7, 10 (1984).

To avoid the application of those oft-stated rules, Vredeveld contends that the medical testimony adduced at the rehearing was not irreconcilable but, in fact, compelled a finding in her favor. Specifically, Vredeveld maintains that Dr. Yost's testimony merely constituted an assumption "that a sprain should have healed within the time he states," which, in any event, was undermined by his "finding tenderness in the area of injury six months after the date of the injury." Brief for Appellant at 8. Thus, his testimony did not explicitly contradict the opinion of Dr. Anderson. Similarly, Vredeveld claims that Dr. Van Wie's testimony did not directly contradict the testimony of Dr. Anderson, noting that Dr. Van Wie did not reach a diagnosis of Vredeveld's condition and did not explicitly find that she was not disabled.

We cannot agree with Vredeveld's characterization of the record. Although Dr. Yost admitted that Vredeveld's subjective response indicated some "tenderness" in the abdominal region, he unequivocally stated that he found no objective indication of any injury to Vredeveld and that she was perfectly fit to return to the type of work she had performed for Gelco. Such testimony is obviously irreconcilable with Dr. Anderson's opinion that Vredeveld was, as to her previous line of work, 100

percent disabled. Likewise, Dr. Van Wie, although he refused to make a diagnosis, did state that he could find nothing to "base any injury on." Vredeveld suggests that the testimony of both doctors is internally inconsistent and, thus, devoid of any probative value. Even assuming that the testimony of either witness was contradictory, in *Zaleski v. Farmland Foods*, 219 Neb. 157, 161, 361 N.W.2d 523, 526 (1985), this court held:

> A conflict or contradiction regarding an expert's opinion need not result from opinions expressed by different experts. A conflict or contradiction of opinions may arise in the course of testimony given by the same expert witness. A good faith conflict due to self-contradiction of an expert's opinions presents a question to be resolved by the trier of fact.

The Workmen's Compensation Court, as the trier of fact, was entitled to resolve any conflicts in the evidence in Gelco's favor and to accept the opinions of Dr. Yost and Dr. Van Wie negativing Vredeveld's claim for "permanent partial disability."

Vredeveld also maintains that the Workmen's Compensation Court should have accepted the conclusions of the attending physician, Dr. Anderson, who was "best able to arrive at a prognosis . . . due to his continuing examination and treatment of [Vredeveld]." Brief for Appellant at 7. Vredeveld argues that placing emphasis on the opinion of the attending physician is especially vital in the context of any case, such as hers, where the diagnosis of the patient could only be based on the subjective complaints of such patient. In *Gibson v. City of Lincoln*, 221 Neb. 304, 376 N.W.2d 785 (1985), we rejected a rule of evidence that an attending physician is conclusively more credible and supplies testimony accorded greater weight than testimony from a physician who has neither attended nor examined a party. The case before us provides a corollary to *Gibson v. City of Lincoln, supra*. The nature and number of examinations by a physician are factors affecting credibility of a medical witness and weight to be attached to testimony from such witness. We decline adoption of an evidentiary rule which, as a matter of law, requires that less credence and weight are attached to testimony of a physician whose medical information about a party is obtained only by office

examination rather than from treatment of a party. "In the absence of discredit as a matter of law, the 'trier of fact' remains the sole judge of a witness' credibility and the testimony's weight." *Gibson v. City of Lincoln, supra* at 313, 376 N.W.2d at 791.

The judgment of the Workmen's Compensation Court on rehearing is supported by competent evidence, is not clearly wrong, and is therefore affirmed.

AFFIRMED.