BARBARA BEAVERS, APPELLANT AND CROSS-APPELLEE, V. IBP, INC., APPELLEE AND CROSS-APPELLANT.

385 N.W.2d 896

Filed May 2, 1986.   No. 85-278.

LeRoy J. Sturgeon of Smith & Smith, for appellant.

Wayne E. Boyd of Smith & Boyd, for appellee.

Krivosha, C.J., Boslaugh, White, Hastings, Caporale, Shanahan, and Grant, JJ.

Caporale, J.

Upon rehearing, the compensation court ordered defendant-appellee and cross-appellant, IBP, Inc., to pay plaintiff-appellant and cross-appellee, Barbara Beavers, certain workers' compensation benefits. In her appeal Beavers assigns as error (1) the finding that she is not totally disabled, (2) the calculation of her period of temporary total disability, (3) the reversal of the attorney fee awarded to her following the original hearing, and (4) the failure to award her an attorney fee upon rehearing. In its cross-appeal IBP assigns as error the award of benefits by a majority of the compensation court for a 30-percent loss of earning power, claiming the award to be excessive. We dismiss the employer's cross-appeal, affirm as modified the compensation court's award on rehearing, and remand for further proceedings.

Beavers is a 28-year-old woman whose formal education ended with the completion of high school. Prior to her employment by IBP in December of 1976, she had been employed as an assembly line worker. On March 15, 1984, Beavers sustained injury in an accident arising out of and in the course of her employment with IBP when she felt a sharp pain in her upper left back while pulling a bone out of a piece of meat. This deboning activity requires the pulling of meat pieces across a counter with a hook held in the left hand and cutting the meat in a curved pulling motion with a knife held in the right hand.

Following the accident, Beavers saw IBP's nurse and then went home. On the following day she saw her family physician, Dr. John Kissel. Concluding that she was not improving under Kissel's care, she next, on March 23, 1984, consulted a chiropractor, Dr. James D. Smith, who had previously treated her for a similar problem with her right side. However, after one visit to Smith, she, at IBP's request, put herself under the care

of an orthopedist, Dr. John J. Dougherty, who also had treated her approximately a year earlier for a similar complaint with her right side.

Dougherty first saw Beavers for her present condition on March 27, 1984, at which time she was complaining of left chest pain. Dougherty's examination revealed that Beavers' left chest was tender, but he found no nodules and was therefore not certain she was "tremendously tender there." Nonetheless, he prescribed a course of physical therapy treatments. Because of Beavers' continuing complaints of pain, Dougherty ordered a bone scan, which produced normal findings. Not knowing what else to do for her, Dougherty sent Beavers to an internist, Dr. William Blankenship. Blankenship reported the results of the tests he performed to be normal. Dougherty then released Beavers from his treatment on June 4, 1984. It was his opinion that she should either return to work and bear the pain or quit her job if she felt she could not tolerate the discomfort. Dougherty saw Beavers again on September 13, 1984, to evaluate her condition at that time. While she was still complaining of chest pain, Dougherty could find no cause for the complaint and was of the opinion Beavers had no disability.

Blankenship considered Beavers' chest wall syndrome to be multifaceted and due to the repetitive motions required by her work. While Blankenship thought the syndrome should go away with time and anti-inflammatory therapy, he questioned whether she should return to the same type of work, since she seemed susceptible to this type of problem.

After being released by Dougherty, Beavers put herself under the care of Dr. Horst G. Blume, a neurological surgeon, first seeing him on June 20, 1984. He was of the opinion she suffered from Tietze's syndrome, a condition wherein Beavers' pain originates at the point the cartilage joins the sternum on her left side at the level of the fifth and sixth thoracic vertebrae. Blume concluded that as of August 14, 1984, Beavers could do no bending, stooping, or reaching above her shoulders; neither could she lift weights of over 5 pounds nor perform repetitive grasping, pushing, or pulling motions with either arm or hand. She could, however, perform repetitive fine manipulative movements. On August 21, 1984, Blume concluded that

Beavers had reached maximum improvement and that she suffered a 15-percent permanent partial physical disability to the body as a whole, but a "much higher" industrial disability. Subsequent to expressing the opinion that Beavers could not be helped further, Blume acquired a new physical therapy machine which he wanted to try on Beavers in the hope of alleviating her pain. In Blume's opinion the March 15, 1984, incident aggravated Beavers' preexisting right-side condition. On October 23, 1984, Blume concluded that Beavers is totally disabled and unable to do any work. Blume is also of the opinion Beavers' condition is permanent.

When Beavers was released to work on August 21, 1984, she was, with Blume's express permission, put to work marking defects on boxes. She did that for a number of weeks until the job was eliminated. She was then, again with Blume's express permission, put to work sorting gloves, which required lifting no more than 2 pounds. The glove-sorting job was designed so Beavers would not have to stoop. Since it was suggested that she be able to sit with a back support, arrangements to enable her to do that were made, although she did not, according to IBP, always avail herself of that opportunity.

Beavers stopped working on October 23, 1984, and was complaining of chest and back pain as of the date of the rehearing before the compensation court, December 13, 1984, as well as a general feeling of being "hunched over" and tired.

We consider Beavers' first assignment of error, the failure of the compensation court to find that she is presently totally disabled, and IBP's cross-appeal, that the loss of earning power award is excessive, together, as they are but different aspects of the same issue.

Resolution of the extent of Beavers' disability and resultant loss of earning power, if any, involves an evaluation or weighing of the evidence. As we have often said and recently reaffirmed, where the record presents nothing more than conflicting medical testimony, this court will not substitute its judgment for that of the compensation court. *Vredeveld v. Gelco Express, ante* p. 363, 383 N.W.2d 780 (1986). Moreover, in testing the sufficiency of evidence to support findings of fact made by the compensation court after rehearing, the evidence must be

considered in the light most favorable to the successful party. *Badgett v. St. Joseph Hosp., ante* p. 467, 384 N.W.2d 302 (1986); *Vredeveld v. Gelco Express, supra.* Further, factual determinations made by the compensation court will not be set aside on appeal unless such determinations are clearly wrong. Neb. Rev. Stat. § 48-185 (Reissue 1984); *Badgett v. St. Joseph Hosp., supra; Snyder v. IBP, Inc., ante* p. 534, 385 N.W.2d 424 (1986).

The evidence ranges from Dougherty's opinion that Beavers suffers no disability to Blume's opinion that she is totally disabled. There exists no factor which compels acceptance of one of those opinions over the other. Consequently, it cannot be said the finding of the compensation court, on rehearing, that Beavers is not totally disabled is clearly wrong. Her first assignment of error therefore fails.

IBP seizes upon Blume's earlier opinion that Beavers suffered a 15-percent permanent partial disability of the body as a whole and ignores the other evidence; for example, Blume's opinion that Beavers' industrial disability was greater than her physical disability because of the activities Beavers could not perform without pain. IBP's claim that the majority of the compensation court ignored Blume's later deposition testimony and relied solely on his earlier report of August 14, 1984, in finding a 30-percent loss of earning power is, quite simply stated, not supported by the record. Blume expressly states in his deposition that he never lessened the restrictions imposed in his August report and further stated his opinion at the time of the deposition to be, as noted earlier, that Beavers was totally disabled. While the record could certainly have been clearer in regard to Beavers' loss of earning power, we cannot say, in view of the medical opinions ranging from no disability to total disability, that fixing the loss of earning power at 30 percent is clearly wrong. See *Mulder v. Minnesota Mining & Mfg. Co.,* 219 Neb. 241, 361 N.W.2d 572 (1985). Accordingly, IBP's cross-appeal must be, and hereby is, dismissed.

Beavers' second assignment of error, that her period of temporary total disability was miscalculated, is also without merit.

The compensation court on rehearing found that Beavers

was temporarily totally disabled from and after March 16, 1984, to and including August 21, 1984. Blume's August 21, 1984, opinion that Beavers had reached maximum improvement supports that finding. It is true that Blume later expressed the opinion that Beavers was totally disabled. However, as recently again pointed out in *Snyder v. IBP, Inc., supra*, and *Vredeveld v. Gelco Express, supra*, a good faith self-contradiction of an expert presents a question of fact to be resolved by the compensation court.

In her third assignment of error Beavers complains that the compensation court on rehearing, in reversing the $400 attorney fee she was awarded on initial hearing, considered an issue not properly before it.

The compensation court's pretrial order, entitled "Report of Settlement Conference Officer," states the issues on rehearing to be: "1. Extent of disability, temporary total and permanent partial. 2. Whether or not the plaintiff can refuse to return to light duty within her medical restrictions when released by her physician and continue to receive compensation benefits."

Rule XXIV of the rules of procedure of the Nebraska Workmen's Compensation Court, filed with the Clerk of this court on April 25, 1985, recites that one of the objectives of the settlement conference is to narrow and reduce the number of issues and to limit the rehearing to matters which are essential and material to the issues to be decided on appeal. The rule further provides that the pretrial order shall supersede all other pleadings and shall set forth a statement of the issues to be determined.

Beavers contends that since the propriety of awarding her an attorney fee on the original hearing was not specifically listed as an issue to be determined, the question could not, under the foregoing rule, be considered by the compensation court on rehearing.

IBP had terminated Beavers' temporary total disability payments on June 4, 1984, based on Dougherty's view that Beavers had reached maximum improvement as of that date. However, the single judge of the compensation court on original hearing found that Beavers suffered a 15-percent permanent partial disability of her body as a whole, entitling

her to benefits for a 15-percent permanent partial disability.

Neb. Rev. Stat. § 48-125 (Reissue 1984) provides in part: "Whenever the employer refuses payment, or when the employer neglects to pay compensation for thirty days after injury, and proceedings are held before the compensation court, a reasonable attorney's fee shall be allowed the employee by the court in all cases when the employee receives an award."

*Smith v. Fremont Contract Carriers*, 218 Neb. 652, 358 N.W.2d 211 (1984), holds, however, that the foregoing statutory language does not authorize the award of an attorney fee where there exists a reasonable controversy between the parties as to the entitlement of compensation. See, also, *Savage v. Hensel Phelps Constr. Co.*, 208 Neb. 676, 305 N.W.2d 375 (1981).

Therein lies the fallacy in Beavers' contention. The issues before the compensation court on rehearing concerned the extent of her permanent disability, if any, and when her temporary disability ended, if it had. As a part of making those determinations, the compensation court on rehearing was called upon to determine whether there existed a reasonable controversy as to the payment of compensation. In other words, just as issue No. 2 in the pretrial order was in fact part of issue No. 1 therein, so, too, was the question of the reasonableness of the controversy at the initial hearing a part of issue No. 1.

Whether there was a reasonable controversy is a question of fact. *Mulder v. Minnesota Mining & Mfg. Co.*, 219 Neb. 241, 361 N.W.2d 572 (1985). In view of Dougherty's opinion that Beavers could return to work on June 4, 1984, and Blume's opinion that she could return to restricted work on August 21, 1984, the evidence supports a finding that there did exist a reasonable controversy between the parties.

Lastly, Beavers assigns as error the failure of the compensation court to award her an attorney fee on rehearing.

IBP applied for a rehearing from the award to Beavers made following the original hearing. Section 48-125 provides in part:

> If the employer files an application for a rehearing before the compensation court from an award of a judge of the compensation court and fails to obtain any reduction in

the amount of such award, the compensation court shall allow the employee a reasonable attorney's fee to be taxed as costs against the employer for such rehearing . . . .

As noted earlier, the compensation court on rehearing, while reversing the award of a $400 attorney fee, doubled the amount of permanent partial disability benefits from a 15-percent disability of the body as a whole to a 30-percent loss of earning power, thereby increasing IBP's potential liability for permanent partial disability from $9,798.97 to $19,597.95. Obviously, IBP did not, by its application for rehearing, obtain any reduction in the amount of Beavers' award on original hearing.

When the employer files an application for rehearing, it is the employer's failure to reduce the award on original hearing which triggers the taxing of a reasonable attorney fee as costs. *Mulder v. Minnesota Mining & Mfg. Co., supra.* Consequently, the compensation court should have awarded Beavers an attorney fee on rehearing.

We therefore affirm as modified the award of the compensation court on rehearing, remand the cause to that court for the purpose of awarding Beavers an attorney fee in connection with the rehearing, and dismiss IBP's cross-appeal.

Beavers is awarded $100 for the services of her attorney in this court. § 48-185.

AFFIRMED AS MODIFIED, AND CAUSE REMANDED WITH DIRECTION. CROSS-APPEAL DISMISSED.