DONALD R. WARD, APPELLANT, V. CITY OF MITCHELL, NEBRASKA, APPELLEE.
400 N.W.2d 862

Filed February 13, 1987.   No. 86-160.

Robert W. Mullin of Van Steenberg, Brower, Chaloupka, Mullin & Holyoke, for appellant.

James R. Hancock of Hancock & Denton, P.C., for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

WHITE, J.

Donald R. Ward appeals from an order of the Workers' Compensation Court denying him benefits. The only error assigned is that the compensation court erred in finding Ward

had not proved by a preponderance of the evidence that his symptoms were caused by his work-related exposure to polychlorinated biphenyl, also known as PCB. We affirm.

Factual determinations of the Workers' Compensation Court will not be set aside on appeal unless they are clearly wrong. *Beavers v. IBP, Inc.*, 222 Neb. 647, 385 N.W.2d 896 (1986); *Snyder v. IBP, Inc.*, 222 Neb. 534, 385 N.W.2d 424 (1986); *Vredeveld v. Gelco Express*, 222 Neb. 363, 383 N.W.2d 780 (1986). We must consider the evidence in the light most favorable to the successful party, when testing the sufficiency of the evidence supporting the Workers' Compensation Court's findings of fact. *Beavers v. IBP, Inc., supra; Vredeveld v. Gelco Express, supra.* A review of the record shows a sufficient basis in evidence for the compensation court's findings regarding causality.

PCB is a toxic chemical, regulated by the EPA, that used to be added to oil as a fire retardant. The appellant claims that his exposure to PCB while dismantling, transporting, and reassembling a power substation while he was superintendent of utilities for the City of Mitchell caused his illnesses and seven hospitalizations, and now renders him unable to work.

In July of 1981 Ward worked on the substation in Alliance, Nebraska, and came in contact with the regulator. The oil inside the regulator had 1,385 parts per million PCB. Ward's contact with the regulator was brushing away greasy dirt on the outside of the bushings with a gloved hand. A glove, when tested later, showed 2.8 parts per million and 6.8 parts per million of two different isomers of PCB. Later in July, Ward became ill, and attributed it at the time to being bitten by a poisonous spider, although at the rehearing he testified for the first time that he felt this hospitalization was PCB-related.

In early September 1981 Ward returned to Alliance and, with the help of two other people, changed the voltage of the transformer by removing inspection plates and moving bars in the oil to different positions. He and his coworkers were required to put their hands into the oil to move the bars. The transformer oil had 229 parts per million PCB (one-sixth the concentration of PCB measured in the regulator). Neither coworker became ill, although each one's exposure was the

same as Ward's. One coworker testified Ward had his hands in oil for between 15 and 30 minutes, but not more than 30 minutes; Ward testified that he had his hands in the oil for up to 4 hours.

Ward was hospitalized in January 1982 for 3 days and in March 1982 for 5 days for hypertension, hepatitis, gall bladder problems, and liver problems. He was hospitalized in June 1982 due to having inhaled a toxic herbicide, and had three more hospitalizations between then and December 1983. He could only work half days, and in December 1983 he quit his job.

Considering the evidence of Ward's PCB exposure in the light most favorable to the appellee, it is clear that the medical evidence offered by the city supports a finding that Ward's symptoms were not PCB-related. Dr. Teitelbaum, a toxicologist and a witness for the City of Mitchell, testified by deposition that in his opinion Ward's exposure to PCB in the transformer for anywhere from 15 minutes to 2 hours would not have caused his illness. He also testified that the exposure with gloved hands with the regulator bushings would not be sufficient contact to cause PCB poisoning. Dr. Teitelbaum considered Ward's exposure to be short term and of little consequence, noting that only persons subjected to prolonged and significant exposure contracted severe illness. Dr. Teitelbaum also considered the level of PCB in Ward's body fat as being about median for his age and not indicative of any significant exposure, other than the exposure which is the fate of anyone who lives in the central United States. The absence of chloracne and peripheral neuropathy indicated to him that the illnesses are not PCB-related.

Dr. Teitelbaum was of the opinion that Ward's first symptoms were the result of a spider bite and his liver problems were due to the progression of hepatitis originally contracted in 1961 and compounded by toxic insult to the liver that is attributable to the many prescription drugs Ward took for ongoing hypertension, gall bladder problems, and gout; his alcohol intake; and the inhalation of herbicides, rather than to incidental PCB exposure.

The medical witnesses for Ward were of the opinion that PCB caused the symptoms, or at least aggravated the

preexisting hepatitis. A review of Dr. Teitelbaum's deposition shows a sufficient basis in evidence for the Workers' Compensation Court's findings regarding causation. We cannot say the findings are clearly wrong. When the record presents nothing more than conflicting medical testimony, we will not substitute our judgment for that of the compensation court. *Beavers v. IBP, Inc.*, 222 Neb. 647, 385 N.W.2d 896 (1986); *Vredeveld v. Gelco Express*, 222 Neb. 363, 383 N.W.2d 780 (1986). The findings of the compensation court as to causation must stand, and the judgment is affirmed.

AFFIRMED.