MARGARITO MENDOZA, APPELLEE AND CROSS-APPELLANT, V. OMAHA MEAT PROCESSORS, THROUGH ITS INSURER, TOWER INSURANCE COMPANY, APPELLANT AND CROSS-APPELLEE, WAUSAU INSURANCE COMPANIES, INTERVENOR-APPELLEE AND CROSS-APPELLEE.

408 N.W.2d 280

Filed June 26, 1987.    No. 86-558.

Terry K. Gutierrez and William E. Gast of William E. Gast, P.C., for appellant.

J. Thomas Rowen of Miller, Carpenter, Rowen, Fitzgerald and Coe, P.C., for appellee.

Rodney G. Gnuse of Schmid, Mooney & Frederick, P.C., for intervenor-appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.

Tower Insurance Company (Tower) appeals the Nebraska Workers' Compensation Court award to Margarito Mendoza (Mendoza), an employee of Omaha Meat Processors (OMP). Mendoza cross-appeals from denial of an attorney fee and an additional payment of 50 percent for waiting time involving delinquent payment of compensation. See Neb. Rev. Stat. § 48-125 (Reissue 1984). We affirm in part and in part reverse and remand with direction.

## BASIS OF CLAIM

OMP employed Mendoza as a "meatcutter," which involved cutting pieces of meat weighing "60 . . . up to 80 pounds." While a carcass is being moved on a conveyor belt, a cutter pulls and sometimes lifts the conveyed meat, which is then cut and trimmed of fat. Occasionally, when a carcass was too heavy for the conveyor system, a meatcutter, with the aid of a meathook, would "pull the meat to get the belt going again." On November 7, 1983, Mendoza, trimming meat, was beside the conveyor when he "reached for a piece of meat and the meat . . . hook ripped off the meat," causing Mendoza to fall backward

against a wall. Mendoza immediately experienced a "sharp pain" in his back, but continued working that day. Tower was the insurance carrier for OMP's workers' compensation coverage on November 7.

On November 11, 1983, Mendoza went to his family physician, Dr. Donald Gammel, and complained about sharp back pain, radiating into his legs. Dr. Gammel prescribed medication and physical therapy for Mendoza and ordered Mendoza not to return to work. When Mendoza's back pain persisted, Dr. Gammel, on November 28, reexamined Mendoza and found a "tenderness to palpation over both paralumbar musculature" and "[p]oint tenderness over the third lumbar spinous process and the right sciatic notch." Based on examination and x rays of Mendoza, Dr. Gammel diagnosed Mendoza's condition as an "[a]cute lumbar strain" and admitted Mendoza to the hospital later on November 28.

While in the hospital, Mendoza was examined by Dr. R.C. Pitner, an orthopedic surgeon, to whom Mendoza had been referred by Dr. Gammel. Dr. Pitner found that Mendoza experienced "some pain with flexion and dorsiflexion of the lumbosacral spine [and] tenderness to palpation over L4-5 and over L5-S1" and diagnosed Mendoza's injury as a "back strain." On December 3, Mendoza was discharged from the hospital and returned to work on December 19, but again experienced sharp pains, down the sides of his legs. During an examination on January 4, 1984, Dr. Pitner found that Mendoza "ha[d] pain with dorsiflexion and some with flexion," as well as "discomfort with lateral bending, particularly to the right" and "[t]enderness over L3-4, L4-5, and L5-S1." Dr. Pitner concluded that Mendoza should not return to work, and prescribed a "chair-back brace" for Mendoza, as well as an exercise program, including daily physical therapy and ultrasound treatment.

Dr. Pitner again saw Mendoza on January 19, 1984, when Mendoza indicated that his back pain was not as severe as it had been, but there was still some tenderness in his low back. Dr. Pitner authorized Mendoza's return to work on January 30. After he had gone back to work, Mendoza returned to Dr. Pitner on April 12 and complained of "numbness" and

"soreness in the low back and in his legs." Dr. Pitner suggested that Mendoza find a "lighter type of job" which did not require lifting heavy objects. When Mendoza's leg pain and soreness in his low back persisted, Dr. Pitner directed that Mendoza permanently refrain from heavy lifting and ordered a "CAT Scan" to ascertain whether Mendoza had a herniated disk.

The CAT scan on May 2 disclosed a protrusion and "mild diffuse posterior bulge" regarding Mendoza's lumbar vertebrae. Dr. Pitner informed Mendoza about the prospects of a myelogram and possible chemical dissolution of the problem disk. However, Mendoza, who had been absent from work since May 8 for medical reasons but without further treatment from Dr. Pitner, returned to his OMP job on May 29 and, because there was no "light duty work," resumed heavy lifting involving carcasses on the conveyor. In the fall of 1984, when Mendoza was reexamined on account of his continuing back pain, Dr. Pitner viewed Mendoza's x rays and recommended "surgical intervention with diskectomy." When Mendoza's back problem persisted, in February of 1985 Dr. Pitner referred Mendoza to Dr. Patrick Bowman, another orthopedic surgeon, for a second opinion regarding back surgery for Mendoza.

Dr. Bowman, on the basis of Mendoza's history, a copy of a report on the CAT scan (May 2, 1984), and his examination of Mendoza, reached a diagnostic "impression" on February 25, 1985; namely, Mendoza suffered from a "[l]umbar disc syndrome." Dr. Bowman did not recommend surgery on Mendoza, and Mendoza continued working for OMP.

In June 1985, Mendoza filed a petition in the Nebraska Workers' Compensation Court, alleging that he had suffered a herniated disk which had resulted from the accident of November 7, 1983.

On August 1, 1985, Mendoza was involved in a second accident at OMP and sustained bodily injury when he attempted to replace a carcass on the conveyor, twisted his back, and experienced intensified back pain and a previously unexperienced "burning" sensation in his legs.

Mendoza, on August 8, returned to Dr. Bowman for another examination regarding the back problem. During that examination, Mendoza did not mention anything concerning

the August 1 accident but complained about increased pain in his back and right leg. Dr. Bowman prescribed medication for Mendoza and authorized Mendoza's return to "light duty work," subject to reexamination on August 19. Because no light duty work was available at OMP, Mendoza did not return to employment with OMP, and reappeared for examination by Dr. Bowman on August 19. A CAT scan on August 23 disclosed Mendoza's "mild herniation of the central portion of the disc" at L4-5, but, when Mendoza indicated that his condition had improved, Dr. Bowman authorized Mendoza's return to work, effective September 16, "on a trial basis." However, Mendoza did not return to work, and was reexamined by Dr. Bowman on September 23. In the September 23 examination, Mendoza told Dr. Bowman about the back pain's "getting worse" after Mendoza had moved furniture into his family's new residence shortly before the return to work authorized for September 16. After the examination on September 23, Dr. Bowman, considering the physical rigors of employment at OMP, instructed Mendoza that he should not return to work.

Dr. Bowman last examined Mendoza on February 25, 1986, when Mendoza stated he was still experiencing pain in his right leg and low back and also informed Dr. Bowman that he had recently driven to Mexico, an automobile trip which had "caused major symptoms" for him. Based on his various examinations of Mendoza, including the examination of February 25, 1986, and the CAT scans, Dr. Bowman concluded that Mendoza's basic problem was a "herniated disk" and "disease process" caused by the "basic insult" (accident) which had occurred in November 1983.

On August 1, 1985, which was the date of Mendoza's second industrial accident, Wausau Insurance Companies (Wausau) provided workers' compensation coverage for OMP, and was permitted to intervene in the proceedings before the Nebraska Workers' Compensation Court. Wausau claimed that Tower was liable for compensation and benefits payable to Mendoza because Mendoza's accident in November 1983 was the "direct and proximate cause of the alleged August 1, 1985 injury." On August 30, 1985, Mendoza filed an amended petition, alleging that, as a result of the accidents in 1983 and 1985, he had

sustained a "herniated disc and aggravation of a herniated disc."

## ONE-JUDGE HEARING

After the one-judge hearing on October 29, 1985, an award was entered, with a finding that the accident of August 1, 1985, was a cause of Mendoza's temporary total disability and "that, therefore, Wausau Insurance Companies is liable for all compensation due after that date and as a consequence of that injury," so long as Mendoza's temporary total disability continued. Tower had paid Mendoza for his total temporary disability benefits which had accrued before August 1, 1985. The one-judge award also contained a finding that no reasonable controversy existed and ordered Wausau to pay an additional amount (50 percent for waiting time involving delinquent payment of compensation) and an attorney fee. See § 48-125. Wausau took over payment of benefits to Mendoza for temporary total disability and requested a rehearing.

## AWARD ON REHEARING

As evidence at the rehearing, Dr. Bowman expressed his opinion that the cause of Mendoza's condition "dates back to a fall at work on 7 November 1983." On cross-examination by Tower, Dr. Bowman described the relationship between Mendoza's disk pathology and the injury on November 7, 1983, as well as the injury of August 1, 1985:

> [B]asically, the disease process . . . which we have tagged him with from the beginning . . . was documented on the CT scan prior to my seeing him on 25 February 1985 . . . .
>
> . . . .
>
> . . . [I]f you're talking about basic causation, you know, what caused his condition, what was the straw that broke the camel's back as it were, I would have to relate that to 7 November 1983. I think there are many things which can cause an aggravation due to this pre-existing condition, including, you know, his long drives, a fall, [or] a lift . . . . It wouldn't surprise me at all, different things — different mishaps down the road subsequent to November 7th, 1983, caused different degrees of symptoms in his symptom level.

On redirect examination, Dr. Bowman testified:

Q. . . . . What do you think the primary cause of this man's condition is — the initial injury in November of '83, the reinjury of his accident, the second occurrence that he testifies to in August of '85, the sudden move that he tells you about in September — September 23rd, or the long drive to Mexico that he tells you about this last time?

A. I think the real key here . . . on which I base the opinion is the dated CAT scan of 25 February 1985. That documents the pathology that this guy has. It's an ongoing thing. It's something that, you know, will continue to progress, and as I say, I'm beginning to be a little bit concerned that it will progress to the point where he needs surgery; but nonetheless, on the CT scan on February 25, 1985, he has definite disk pathology. That was done prior to — to August of '85, which would put it before that second on-the-job injury. That was done before the trip to Mexico, and it was done before the move and it was done before all the rest of it and based on the findings of that CT scan it was my opinion that the prime pathology occurred as of 7 November 1983 and everything subsequent to that could be only characterized, to one degree or another, as an aggravation of a pre-existing condition.

Dr. Bowman further testified that it was "conceivable" or "possible" that the accident of August 1, 1985, might have contributed to the pathology in Mendoza's back. As Dr. Bowman acknowledged, the "moving incident" and the accident of August 1, 1985, were just "possibles" as factors in Mendoza's pathology, but the trip to Mexico did not cause Mendoza's condition.

Dr. Bowman supplied the only medical evidence on causation of Mendoza's disability.

In its award after rehearing, the Workers' Compensation Court stated:

The issue herein involves the cause of the plaintiff's disability from and after August 8, 1985. The plaintiff alleges that he suffered a new accident and injury on August 1, 1985. There is also evidence that the plaintiff may have injured his back in September, 1985, while

moving furniture to a new residence. There is also a mention of a long drive to Mexico by the plaintiff as a possible cause.

The [testimony] of Dr. Bowman clearly shows that the original injury of November 17 [sic], 1983, is *the* cause of all of [Mendoza's disability]. Therefore, Tower Insurance Company is liable for all of the compensation benefits awarded herein.

(Emphasis supplied.)

Thus, as a result of the rehearing, the Workers' Compensation Court found that the accident of November 1983 caused Mendoza's injury and temporary total disability, which had continued from the date of the accident until the rehearing (except the intermittent periods of Mendoza's return to work). The compensation court ordered Tower to pay Mendoza's medical expenses and compensation for Mendoza's total disability after the November 1983 accident and "so long in the future as [Mendoza] shall remain totally disabled as a result of [the accident on November 7, 1983]." In the award after rehearing, the compensation court also found:

There is a reasonable controversy between the parties as to the cause of the plaintiff's disability starting August 8, 1985 and [Wausau] is therefore not liable for additions for waiting time and attorney fees. In addition, [Wausau] requested this rehearing and has succeeded in securing a reduction in the amount of the original award since the Coury [sic] has deleted that provision of the original award which provided for additional compensation for waiting time and an attorney's fee. Therefore, there is no attorney's fee awarded to the plaintiff for this rehearing.

Tower appeals the determination of its liability for Mendoza's compensation and benefits accruing after August 1, 1985. Mendoza cross-appeals from denial of an additional payment of 50 percent for waiting time (delinquency in payment of compensation) and an attorney fee allowable under § 48-125.

## APPLICABLE LAW

Determination of causation is, ordinarily, a matter for the trier of fact. See, *Bender v. Norfolk Iron & Metal Co.*, 224 Neb. 706, 400 N.W.2d 859 (1987); *Ward v. City of Mitchell*, 224 Neb.

711, 400 N.W.2d 862 (1987). An independent intervening cause, as the proximate cause of an injury, is, generally, a matter of defense and, as such, must be proved by the party asserting that defense. Cf. *Lynn v. Metropolitan Utilities Dist., ante* p. 121, 403 N.W.2d 335 (1987) (contributory negligence is a defense to be proved by one asserting such defense).

Findings of fact made by the Nebraska Workers' Compensation Court after rehearing have the same force and effect as a jury verdict in a civil case. Neb. Rev. Stat. § 48-185 (Reissue 1984); *Zaleski v. Farmland Foods*, 219 Neb. 157, 361 N.W.2d 523 (1985). In testing the sufficiency of evidence to support findings of fact made by the Nebraska Workers' Compensation Court after rehearing, the evidence must be considered in the light most favorable to the successful party. *Vredeveld v. Gelco Express*, 222 Neb. 363, 383 N.W.2d 780 (1986); *Knudsen v. Metropolitan Utilities Dist.*, 220 Neb. 902, 374 N.W.2d 56 (1985). Factual determinations by the Workers' Compensation Court will not be set aside on appeal unless such determinations are clearly [erroneous]. Regarding facts determined and findings made after rehearing in the Workers' Compensation Court, § 48-185 precludes the Supreme Court's substitution of its view of facts for that of the Workers' Compensation Court if the record contains evidence to substantiate the factual conclusions reached by the Workers' Compensation Court. *Vredeveld v. Gelco Express, supra; Gibson v. City of Lincoln*, 221 Neb. 304, 376 N.W.2d 785 (1985). As the "trier of fact," the Nebraska Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given testimony.

*Norris v. Iowa Beef Processors*, 224 Neb. 867, 876, 402 N.W.2d 658, 666 (1987).

Tower contends that Mendoza's disability resulted from the accident of August 1, 1985, when Wausau had the coverage for OMP. According to Tower, because the 1985 accident and injury constituted an independent intervening cause rather than a recurrence of the industrial injury sustained on November 7, 1983, Tower is not liable for Mendoza's medical expenses and

benefits after August 1, 1985.

In support of its contention, Tower relies on *Towner v. Western Contracting Corp.*, 164 Neb. 235, 82 N.W.2d 253 (1957), where this court adopted the following rule: Where there have been two accidents to an employee, the question of whether the disability sustained by him should be attributed to the first accident or to the second accident depends on whether or not the disability sustained was caused by a recurrence of the original injury or by an independent intervening cause. If the second injury is but a recurrence of the original injury, compensation therefor must be paid by the employer and insurance carrier at the time of the first injury. See, also, *Snowardt v. City of Kimball*, 174 Neb. 294, 117 N.W.2d 543 (1962); *Doty v. Aetna Life & Casualty*, 217 Neb. 428, 350 N.W.2d 7 (1984).

"[W]here there have been two injuries to an employee, the question of whether the disability sustained by him should be attributable to the first or to the second depends on whether or not the disability sustained was caused by the original injury or by an independent intervening cause." *Breed v. Interstate Glass Co.*, 188 Neb. 284, 285, 196 N.W.2d 169, 170 (1972).

Recognizing an employee's burden to show the cause-and-effect relationship involving employment, an industrial injury, and disability, we stated in *Caradori v. Frontier Airlines*, 213 Neb. 513, 516-17, 329 N.W.2d 865, 867 (1983):

" 'Where the claimed injuries are of such a character as to require skilled and professional persons to determine the cause and extent thereof, the question is one of science. Such a question must necessarily be determined from the testimony of skilled professional persons and cannot be determined from the testimony of unskilled witnesses having no scientific knowledge of such injuries.' The employee must show by competent medical testimony a causal connection between the alleged injury, the employment, and the disability." [Citing and quoting from *Mack v. Dale Electronics, Inc.*, 209 Neb. 367, 307 N.W.2d 814 (1981).]

An award of compensation may not be based on

possibilities or speculative evidence. [Citation omitted.] Thus, the mere possibility that a disability arose out of and in the course of employment does not satisfy the claimant's burden of proof.

The claimant, Caradori, having only proved that the disability could have been caused by an accident arising out of and in the course of employment has not sustained her burden of proof.

As a corollary to the rule in *Caradori, supra,* mere possibility of an independent intervening cause does not relieve an employer from liability for an employee's otherwise compensable claim for workers' compensation and benefits.

Dr. Bowman's testimony is unequivocal that the cause of Mendoza's disability is the accident and injury of November 7, 1983. In his testimony, Dr. Bowman emphatically stated that Mendoza's automobile trip to Mexico played no causal role in Mendoza's disability. While Dr. Bowman did allow for the possibility that events after November 1983, that is, the industrial incident on August 1, 1985, and Mendoza's moving furniture, might have caused Mendoza's condition, Dr. Bowman testified that the disk pathology in Mendoza's back was actually caused by the industrial accident on November 7, 1983. According to Dr. Bowman, incidents after the accident of November 7, 1983, were merely possible causes of Mendoza's disability. Speculative or conjectural causes do not satisfy the burden of proof on the issue of causation, including the issue of an independent intervening cause.

Additionally, Tower refers to Professor Larson's treatise on workers' compensation law and suggests application of the "last injurious exposure" rule, which requires that, in successive-injury cases, full liability is placed on the insurance carrier which covers the risk "at the time of the most recent injury that bears a causal relation to the disability." 4 A. Larson, The Law of Workmen's Compensation § 95.20 at 17-112 (1987). Also, Tower points to *Osteen v. A. C. and S., Inc.,* 209 Neb. 282, 307 N.W.2d 514 (1981), a case involving a claim based on an occupational disease, peritoneal mesothelioma—a rare form of abdominal cancer caused by exposure to asbestos particles. Osteen had worked for 40

employers over a period exceeding 30 years. In affirming an award against the employer for which Osteen was working at the time of Osteen's last injurious exposure to asbestos fiber, we noted: "The last injurious exposure, to be 'injurious,' must indeed bear a causal relationship to the disease." 209 Neb. at 290, 307 N.W.2d at 520. Consequently, we need not discuss the "last injurious exposure" rule adopted in *Osteen, supra,* since the evidence in Mendoza's case failed to establish a "causal relationship" between Mendoza's disability and any event after November 7, 1983.

As aptly observed by Professor Larson:

> There is . . . a fine line separating aggravations from recurrences . . . .
>
> In order to find that there has been an aggravation, it must be shown that the second episode contributed independently to the final disability. Also, there must have been a second "injury" as that term is used in the jurisdiction. . . .
>
> If the second injury takes the form merely of a recurrence of the first, and if the second incident does not contribute even slightly to the causation of the disabling condition, the insurer on the risk at the time of the original injury remains liable for the second. . . . This group . . . includes the kind of case in which a worker has suffered a back strain, followed by a period of work with continuing symptoms indicating that the original condition persists, and culminating in a second period of disability precipitated by some lift or exertion.

4 A. Larson, *supra* §§ 95.22 and 95.23 at 17-125 to 17-127, 17-135.

The evidence fails to establish that any incident after November 7, 1983, was an independent intervening cause of Mendoza's disabling condition. Because Tower provided the workers' compensation insurance coverage at the date of the first accident (November 7, 1983), any industrial injury to Mendoza after November 7, 1983, is merely a recurrence of the injury in 1983, resulting in Tower's liability for Mendoza's disability. Tower has failed to demonstrate that the finding of causation made by the Nebraska Workers' Compensation

Court is clearly erroneous. Concerning Tower's liability for payment of Mendoza's medical expenses and benefits for Mendoza's temporary total disability, the award after rehearing in the Nebraska Workers' Compensation Court is affirmed.

MENDOZA'S CROSS-APPEAL

Section 48-125 of the Nebraska Workers' Compensation Act in part provides:

> (1) Except as hereinafter provided, all amounts of compensation payable under the provisions of this act shall be payable periodically in accordance with the methods of payment of wages of the employee at the time of the injury or death; *Provided*, fifty per cent shall be added for waiting time for all delinquent payments after thirty days' notice has been given of disability. Whenever the employer refuses payment, or when the employer neglects to pay compensation for thirty days after injury, and proceedings are held before the compensation court, a reasonable attorney's fee shall be allowed the employee by the court in all cases when the employee receives an award.

As construed by this court, § 48-125 authorizes a 50-percent payment for waiting time involving delinquent payment of compensation and an attorney fee, where there is no reasonable controversy regarding an employee's claim for workers' compensation. See *Novotny v. City of Omaha*, 207 Neb. 535, 299 N.W.2d 757 (1980). In considering the application of § 48-125, we stated in *Smith v. Fremont Contract Carriers*, 218 Neb. 652, 657, 358 N.W.2d 211, 216 (1984): "The reasonable controversy rule is still viable."

Whether a reasonable controversy exists pertinent to § 48-125 is a question of fact. *McGee v. Panhandle Technical Sys.*, 223 Neb. 56, 387 N.W.2d 709 (1986); *Mulder v. Minnesota Mining & Mfg. Co.*, 219 Neb. 241, 361 N.W.2d 572 (1985).

Illustrative cases where a "reasonable controversy" was found to exist in reference to § 48-125 include:

*Novotny v. City of Omaha, supra*: Resolution of a question of law (construction of a statute) was necessary to determine whether benefits paid under a municipal disability plan were in lieu of workers' compensation and benefits;

*Mulder v. Minnesota Mining & Mfg. Co., supra*: Physicians

testified concerning varying degrees of an employee's permanent disability; and

*Wheeler v. Northwestern Metal Co.*, 175 Neb. 841, 124 N.W.2d 377 (1963): Conflicting medical evidence on the question whether an employee's injuries prevented return to work as a laborer, resulting in permanent total disability.

Included among the decisions of this court reflecting an absence of a "reasonable controversy" in reference to § 48-125 are the following:

*Smith v. University of Nebraska Medical Center*, 201 Neb. 730, 271 N.W.2d 852 (1978), *supp. op.* 202 Neb. 493, 276 N.W.2d 86 (1979): Delay in payment of disability benefits was attributable to the employer's erroneous understanding of "current law of the State of Nebraska." 201 Neb. at 735, 271 N.W.2d at 855. See, also, *Abel Construction Co. v. Goodman*, 105 Neb. 700, 181 N.W. 713 (1921);

*Minshall v. Plains Mfg. Co.*, 215 Neb. 881, 341 N.W.2d 906 (1983): An employer's unilateral determination that the employee's total disability had ceased and was followed by permanent partial disability, resulting in a reduction of disability benefits; and

*Franklin v. Pawley*, 215 Neb. 624, 340 N.W.2d 156 (1983): Employer contended that a third party was a statutory employer, see Neb. Rev. Stat. § 48-116 (Reissue 1984), and, therefore, jointly and severally liable for payments due an injured employee, but this court reasoned that the employer's contention "would not in any manner have affected [employer's] independent liability." 215 Neb. at 630, 340 N.W.2d at 160.

Thus, for the purpose of § 48-125, and as some criteria to determine whether a reasonable controversy exists between an employer and employee, a reasonable controversy may exist: (1) if there is a question of law previously unanswered by the Supreme Court, which question must be answered to determine a right or liability for disposition of a claim under the Nebraska Workers' Compensation Act, or (2) if the properly adduced evidence would support reasonable but opposite conclusions by the Nebraska Workers' Compensation Court concerning an aspect of an employee's claim for workers' compensation,

which conclusions affect allowance or rejection of an employee's claim, in whole or part. To avoid the payments assessable under § 48-125, an employer need not prevail in opposition to an employee's claim for compensation, but must have an actual basis, in law or fact, for disputing the employee's claim and refraining from payment of compensation.

Unless the character of an injury is objective, that is, an injury's nature and effect are plainly apparent, an injury is a subjective condition, requiring an opinion by an expert to establish the causal relationship between an incident and the injury as well as any claimed disability consequent to such injury. See, *Hamer v. Henry*, 215 Neb. 805, 341 N.W.2d 322 (1983); *Mack v. Dale Electronics, Inc.*, 209 Neb. 367, 307 N.W.2d 814 (1981); *McCann v. Holy Sepulchre Cemetery Assn.*, 205 Neb. 444, 288 N.W.2d 45 (1980); *Eiting v. Godding*, 191 Neb. 88, 214 N.W.2d 241 (1974).

Neither Tower nor Wausau denies that Mendoza was industrially injured on November 7, 1983, and August 1, 1985, in incidents arising out of and in the course of his employment with OMP. On the one hand, Tower maintains it has no liability for Mendoza's condition after August 1, 1985, and attempted to show an exonerating break in causation, an independent intervening cause, from the testimony and diagnosis by Dr. Bowman. On the other hand, Wausau apparently accepted Dr. Bowman's diagnosis concerning Mendoza's condition. As a resolution of the question concerning causation determinative of liability on the part of one of the insurance companies, the proceedings in the compensation court took on the character of a declaratory judgment action between two insurance companies, seeking to determine a legal issue of liability for an undisputed loss ostensibly indemnifiable under provisions of each company's policy. For such declaration, Mendoza was required to participate as a litigant and retry his case in the rehearing before the compensation court. Tower sought to build its case through Mendoza's expert witness and failed on the issue of an independent intervening cause. However, there is an indication that Wausau paid some benefits regarding Mendoza's disability. Of course, if Mendoza has received compensation and benefits otherwise payable on his

compensable claim, an additional payment of 50 percent, authorized by § 48-125, would not be required, because there would have been no delinquency in payments due Mendoza. The record before us does not indicate that all payments, to or on behalf of Mendoza, have been made. For that reason, we remand this matter to the Nebraska Workers' Compensation Court with direction to determine whether there is any delinquency in payment of compensation or benefits and, if such delinquency exists, to make the proper computation of an additional payment in accordance with § 48-125, which additional amount shall be paid by Tower to Mendoza, inasmuch as there was no factual basis for dispute on the issue of causation in reference to the industrial incidents of November 7, 1983, and August 1, 1985.

Regarding an attorney fee assessable under § 48-125, Tower contended that Mendoza's disability was caused by some event outside the industrial accident of November 7, 1983. After rehearing, the compensation court concluded that "the plaintiff *may* have injured his back in September, 1985, while moving furniture to a new residence. There is also a mention of a long drive to Mexico by the plaintiff as a *possible* cause." (Emphasis supplied.) Regarding the issue of a reasonable controversy between employer and employee, the conclusion reached by the compensation court suffers from the same fallacious premise suggested by Tower: Conjecture or speculation justified the delay in payment of compensation. The compensation court's conclusions about a reasonable controversy, reflecting speculative or conjectural causes after November 7, 1983, and causes unsubstantiated by any evidence, are not supported by permissible findings of fact. As we have previously pointed out in this opinion pertinent to Tower's assertion of an independent intervening cause, Dr. Bowman's diagnosis of Mendoza's condition contained the only expression of a causal relationship between the disk pathology, a subjective condition, and a specific event, the industrial accident on November 7, 1983. We find nothing internally inconsistent or self-contradictory in Dr. Bowman's testimony about causation in relation to the industrial accident of November 7, 1983. Without evidence from Tower contradicting

Dr. Bowman's opinion on causation as reflected in the record which we have reviewed, we are compelled to conclude that conjecture or speculation about causality was the basis for any assertion or conclusion that a reasonable controversy existed between Mendoza and OMP. If denial predicated on conjecture and speculation, or mere possibility asserted by an employer, creates a reasonable controversy within the meaning this court has ascribed to § 48-125, an employer's denial of a claim by an employee would necessarily and automatically include a reasonable controversy. Based on the record brought to this court, we find that no reasonable controversy existed between Mendoza and Tower. The compensation court's finding on rehearing that a reasonable controversy existed is clearly erroneous and is, therefore, set aside. Under the circumstances, Mendoza is entitled to an attorney fee authorized by § 48-125. Consequently, we remand this matter to the Nebraska Workers' Compensation Court with direction that the compensation court shall determine and award to Mendoza a reasonable attorney fee for services rendered by Mendoza's lawyer for the rehearing before the Workers' Compensation Court, which attorney fee shall be paid by Tower. See *Smith v. University of Neb. Medical Ctr.*, 201 Neb. 730, 271 N.W.2d 852 (1978), *supp. op.* 202 Neb. 493, 276 N.W.2d 86 (1979). Also, because Tower has failed to reduce the award after rehearing, Mendoza is allowed $1,000 for services of his attorney in this court. See § 48-125.

AFFIRMED IN PART, AND IN PART REVERSED<br>AND REMANDED WITH DIRECTION.

BOSLAUGH, J., dissenting in part.

I dissent only from that part of the opinion which sustains the cross-appeal and holds that the evidence does not support the finding of the compensation court that a reasonable controversy existed as to the cause of the plaintiff's disability.

Following the hearing before a single judge, the compensation court found that the accident of August 1, 1985, contributed to the disabling condition and that there was no reasonable controversy as to the plaintiff's right to recover compensation by reason of the accident of August 1, 1985.

On rehearing, the panel of three judges found that the

deposition of Dr. Bowman, taken on February 25, 1986, approximately 4 months after the first hearing, "clearly shows that the original injury of November 17 [sic], 1983, is the cause of all of the disability."

It was the plaintiff's burden to establish not only his disability, but also the cause of the disability. The testimony of Dr. Bowman as the treating physician would have been available at the time of the first hearing, but since his deposition was not taken until long after that hearing, there is at least an inference that his testimony was not offered at the time of the first hearing.

There were at least four possibilities as to the cause of the plaintiff's disability: the accident of November 7, 1983; the accident of August 1, 1985; the furniture-moving episode in September 1985; and the Mexico City trip in February 1986.

It is of some significance that Dr. Bowman released the plaintiff to return to work on September 16, 1985, with no restrictions. And although Dr. Bowman was of the opinion that the injury on November 7, 1983, was the cause of all of the plaintiff's disability, his opinion was weakened by the fact that he had no note on his chart of *any* accident or injury in August of 1985 and testified that "I don't know any details about what happened in August."

As the majority opinion points out, there is but a fine line separating aggravation from recurrences. On cross-examination Dr. Bowman testified that "there are many things which can cause an *aggravation* due to this pre-existing condition, including, you know, his long drives, a fall, a lift, a lot of things . . . is it conceivable that he did have *aggravations* to this pre-existing, basic condition, *I would say it's quite likely that he did*." (Emphasis supplied.) He further testified that "it was my opinion that the prime pathology occurred as of 7 November 1983 and *everything subsequent to that could be only characterized, to one degree or another, as an aggravation of a pre-existing condition*." (Emphasis supplied.)

The interpretation of Dr. Bowman's testimony was a matter for the trier of fact. Until the matter had been submitted to the compensation court, a strong argument could be made that the plaintiff's increase in disability was not due to the 1983

accident. It seems to me that under those circumstances, the compensation court could find that a reasonable controversy existed.

HASTINGS and CAPORALE, JJ., join in this dissent.