ORE THOMPSON, APPELLEE, V. MONFORT OF COLORADO, INC., APPELLANT.

375 N.W.2d 601

Filed October 25, 1985.   No. 84-890.

Kenneth H. Elson, for appellant.

Scott A. Burcham of Baylor, Evnen, Curtiss, Grimit & Witt, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.

Monfort of Colorado, Inc., appeals the award on rehearing rendered in favor of Ore Thompson by the Nebraska Workmen's Compensation Court. In addition to generally denying that Thompson had a compensable claim, Monfort specifically alleged absence of notice regarding Thompson's accident or injury. We affirm the award on rehearing.

In the fall of 1983 Thompson worked as a "head boner" for Monfort at its Grand Island plant. A head boner uses an electric knife to cut meat from the head of a slaughtered animal. Such job requires that Thompson and his coworkers stand at a boning table as animal heads pass before them and that workers sometimes carry boxes weighing up to 80 pounds. The floor beside the table was "wet or bloody and kind of greasy" and uneven, sloping toward a floor drain beneath the table. While he was hanging his boning knife on a hook shortly before lunchtime on Friday, September 16, 1983, Thompson slipped and fell to the floor near the boning table. From the other side of the table, a fellow worker saw Thompson fall from view and reappear as Thompson "pulled himself back up with the table." The coworker also observed Thompson getting up with a "painful look on his face" as he was "grabbing his back."

Before eating lunch Thompson told a plant supervisor, Gay Hansen, that "I slipped and fell and hurt myself." Hansen said he would inspect the accident site later in the day. After lunch Thompson told his immediate supervisor, the offal foreman—Cleo Dukes, about the "fall." Thompson experienced immediate pain in his lower back after the fall and during the remainder of Friday.

Thompson's back pain prevented his working Saturday, September 17, but Thompson left a message on the company's telephonic recorder ("answering machine") concerning his absence from work due to the injury. Thompson continued to experience pain on the weekend. On Monday, September 19, with Dukes' permission, Thompson saw a Grand Island physician, who wrote a note to Monfort that Thompson could not work on an "uneven surface." On September 20 Thompson delivered that note to the company "nurse" (a medical technician) at the plant. Thompson saw a second Grand Island physician and obtained another note about the uneven floor and Thompson's work. Thompson delivered this note to Monfort's general foreman, Harley Thomas. The records of neither Grand Island physician contained reference to Thompson's fall on September 16. The head of Monfort's slaughter division at Grand Island characterized Thompson as a "cry baby" and told Thompson not to return to Monfort until Thompson "got something done with [his] back and got it fixed."

Because his condition persisted, Thompson was referred to a neurosurgeon, Dr. R. Schuyler Gooding. After a November 8 myelogram of Thompson, Dr. Gooding diagnosed Thompson's condition as a disk problem and on November 10 performed surgery on Thompson, with a postoperative diagnosis of "herniated nucleus pulposus [sic] L4-5 with right sciatica." In a report rendered on December 19, Dr. Gooding stated that Thompson's back condition was "the result of a fall at Monforts [sic] of Colorado, a meat packing plant in Grand Island, which occurred while the patient was working as a 'beef cutter.' " During his testimony at the rehearing, Dr. Gooding expressed his opinion that Thompson's disk problem was "directly related to the fall" of September 16. Dr. Gooding then

testified that Thompson had sustained permanent disability at 15 percent to the body as a whole and recommended rehabilitation because Thompson should not return to "any form of employment that would require him to lift in excess of 50 pounds as a part of that employment." Thompson last saw Dr. Gooding on April 26, 1984.

At the rehearing various Monfort personnel, including the medical technician, foreman (Dukes), and general foreman (Thomas), testified that Thompson never mentioned that he had fallen on September 16, 1983. Monfort's records indicated that Thompson complained about pain attributed to standing on a sloping or uneven floor, not to pain resulting from injury in a fall on September 16. Before filing suit Thompson never gave Monfort written notice concerning his alleged fall on September 16.

In its award rendered on rehearing, the compensation court determined that Thompson had sustained personal injury as the result of the slip and fall accident on September 16, 1983, awarded compensation benefits regarding Thompson's permanent partial disability, and ordered a program of rehabilitation.

Monfort claims the Workmen's Compensation Court committed error (1) by finding that Thompson's injury was the result of a compensable accident on September 16, 1983, and (2) by not finding that Thompson failed to give written notice of injury as required by Neb. Rev. Stat. § 48-133 (Reissue 1984).

We again note that our reviewing an award of the Nebraska Workmen's Compensation Court is governed by Neb. Rev. Stat. § 48-185 (Reissue 1984), which in pertinent part provides: "The findings of fact made by the Nebraska Workmen's Compensation Court after rehearing shall have the same force and effect as a jury verdict in a civil case." As the "trier of fact," the Workmen's Compensation Court is the sole judge of the credibility of witnesses and the weight to be given to testimony. Entering into a resolution by the Workmen's Compensation Court regarding any conflict of evidence are factors such as the respective interests of the parties in the lawsuit; demeanor of witnesses, including the parties, while testifying before the court; the apparent fairness exhibited by the witnesses; the

extent to which the testimony of the various witnesses was corroborated; and the reasonableness or unreasonableness of statements of such witnesses. Cf. *Gregory v. Davis*, 214 Neb. 408, 334 N.W.2d 1 (1983). Factual determinations by the Workmen's Compensation Court will not be set aside on appeal unless such determinations are clearly wrong. See, *Zaleski v. Farmland Foods*, 219 Neb. 157, 361 N.W.2d 523 (1985); *Paris v. J. A. Baldwin Mfg. Co.*, 216 Neb. 151, 342 N.W.2d 198 (1984). Regarding facts determined and findings made upon rehearing in the Workmen's Compensation Court, § 48-185 precludes the Supreme Court's substitution of its view of facts for that of the Workmen's Compensation Court if the record contains evidence to substantiate the factual conclusions reached by the Workmen's Compensation Court. See *Thomas v. Kayser-Roth Corp.*, 211 Neb. 704, 320 N.W.2d 111 (1982). Moreover, in testing the sufficiency of evidence "every controverted fact must be resolved in favor of the successful party, and the successful party is given the benefit of every inference that can be drawn from the evidence." *Tranmer v. Mass Merchandisers*, 218 Neb. 151, 152, 352 N.W.2d 610, 611 (1984).

Monfort argues that its records and testimony from its employees conclusively negatived Thompson's evidence so that the claim has not been proved by a preponderance of evidence. To reach such conclusion the eyewitness account of Doggett and the medical opinion by Dr. Gooding would have to be disregarded entirely. Monfort has shown no plausible reason that Thompson's evidence about the accident must be completely rejected as a matter of law.

On the question of Thompson's notice regarding his accident, Monfort refers us to § 48-133, as follows:

> No proceedings for compensation for an injury under this act shall be maintained unless a notice of the injury shall have been given to the employer as soon as practicable after the happening thereof . . . . The notice shall be in writing, and shall state in ordinary language the time, place, and cause of the injury. . . . A notice given under the provisions of this section shall not be held invalid or insufficient by reason of any inaccuracy in

stating the time, place or cause of the injury, unless it is shown that it was the intention to mislead, and the employer, or the insurance company carrying such risk, as the case may be, was in fact misled thereby. Want of such written notice shall not be a bar to proceedings under this act, if it be shown that the employer had notice or knowledge of the injury.

Although the Workmen's Compensation Court neglected to express a specific finding regarding Monfort's notice of Thompson's injury of September 16, implicit in the award on rehearing is a finding that Monfort had notice of the injury in question. Monfort contends written notice only will satisfy the notice requirement of § 48-133.

If an employer does not have actual notice or knowledge of an employee's injury, § 48-133 requires written notice to the employer concerning the employee's injury to be compensated under the Workmen's Compensation Act. See, *Krajeski v. Beem*, 157 Neb. 586, 60 N.W.2d 651 (1953); *Seymour v. Journal-Star Printing Co.*, 174 Neb. 150, 116 N.W.2d 297 (1962).

Knowledge of an employee's injury, gained by the employee's foreman, supervisor, or superintendent in a representative capacity for an employer, is knowledge imputed to the employer and notice to an employer sufficient for the notice requirement of § 48-133. See, *Clary v. R. S. Proudfit Co.*, 124 Neb. 582, 247 N.W. 417 (1933); *Gilbert v. Metropolitan Utilities Dist.*, 156 Neb. 750, 57 N.W.2d 770 (1953). See, also, *O'Brien v. H & S Asphalt Co.*, 302 Minn. 295, 224 N.W.2d 510 (1974); *Jones v Douglas & Lomason*, 55 Mich. App. 323, 222 N.W.2d 229 (1974). A company nurse's knowledge about an employee's injury is, also, imputed to the company-employer. See, *Panchak v. Simmons Co.*, 15 N.J. 13, 103 A.2d 884 (1954); *Amer. Distilling Co. v. The Industrial Com.*, 40 Ill. 2d 350, 239 N.E.2d 848 (1968). Such imputation of knowledge to the employer equally results from a company's medical technician acquiring knowledge while providing on-the-job health service for an injured employee of the employer.

The last sentence of § 48-133 eliminates an absolute requirement of written notice to the employer, namely, "Want

of such written notice shall not be a bar to proceedings under this act, if it be shown that the employer had notice or knowledge of the injury." In place of indispensable written notice, § 48-133 contemplates a situation where an employer has notice or knowledge sufficient to lead a reasonable person to conclude that an employee's injury is potentially compensable and that, therefore, the employer should investigate the matter further. See 3 A. Larson, The Law of Workmen's Compensation § 78.31(a) (1983). See, also, *Skinner v. Dawson Metal Products*, 575 S.W.2d 935 (Mo. App. 1978).

In the case before us the record reflects that Monfort's personnel have denied any communication from Thompson about an accident or injury on September 16, while Thompson has testified that he told the company medical technician, his foreman (Dukes), and a plant supervisor (Hansen) about Thompson's fall and injury sustained on September 16. Consequently, the record presents a question of fact and substantiates the factual conclusion reached by the Workmen's Compensation Court—Monfort had notice or knowledge of Thompson's accident and injury as soon as practicable after occurrence. To require Thompson to give written notice to Monfort under the circumstances would require an employee with an injured back to carry coals to Newcastle. The knowledge acquired by Monfort's employees—medical technician, foreman, and supervisor—supplied Monfort with knowledge to satisfy the notice requirement of § 48-133.

Whatever Monfort suggests may be myth in Thompson's claim, the Workmen's Compensation Court has settled as fact. Monfort has not demonstrated that the Workmen's Compensation Court was clearly wrong in any factual determination affecting the award on rehearing. Therefore, the award on rehearing is affirmed in all respects. Further, Thompson is awarded an attorney fee of $1,000 for services of his attorney in this court.

AFFIRMED.