PAMELA SNOWDEN, WIDOW OF DECEASED EMPLOYEE JEFFREY SNOWDEN, APPELLANT, AND GENEVIEVE SNOWDEN, DEPENDENT OF DECEASED EMPLOYEE, APPELLEE, v. HELGET GAS PRODUCTS, INC., APPELLEE.

721 N.W.2d 362

Filed September 12, 2006.    No. A-05-1478.

W. Craig Howell, of Howell, Wilson & Derr, P.C., L.L.O., and Jerold V. Fennell for appellant.

Matthew J. Buckley and William D. Gilner, of Nolan, Olson, Hansen, Lautenbaugh & Buckley, L.L.P., for appellee Helget Gas Products.

INBODY, Chief Judge, and SIEVERS and CARLSON, Judges.

SIEVERS, Judge.

Pamela Snowden and Genevieve Snowden, the widow and dependent child of Jeffrey Snowden, respectively, brought a workers' compensation action claiming that Jeffrey was injured while working at Helget Gas Products, Inc. (Helget), on February 18, 2002, while lifting gas cylinders. Pamela and Genevieve alleged that as a consequence of the injury, Jeffrey committed suicide on March 13, 2004. Pamela and Genevieve sought temporary disability benefits, payment of medical and funeral expenses, and widow's and dependent's benefits. The trial judge of the Workers' Compensation Court entered an order of dismissal, finding that Jeffrey failed to report his injury to his employer as soon as practicable. Pamela appealed to the review panel of the Workers' Compensation Court, which affirmed the trial judge's decision. Pamela appeals, and we reverse, because after review of the undisputed facts, we find that a reasonable employer had notice or knowledge Jeffrey's injury was potentially compensable and that as a result, the employer should have investigated the matter which satisfies the notice requirement of Neb. Rev. Stat. § 48-133 (Reissue 2004). Additionally, because of the trial judge's failure to render a reasoned decision under Worker's Comp. Ct. R. of Proc. 11 (2006), we vacate the judge's finding that Jeffrey's death by suicide was willful negligence.

## FACTUAL BACKGROUND

Prior to 2002, Jeffrey suffered from various medical difficulties resulting from a car accident occurring in the late 1970's. Jeffrey began working at Helget in 2001. During the interview process, Jeffrey informed Helget that he had previously injured his back but that his doctors had released him to work. While working at Helget, Jeffrey was responsible for loading cylinders filled with gas onto the delivery truck and delivering them to the customers. According to Dale Weidner, Jeffrey's supervisor at Helget, the typical filled gas cylinder stands about 5½ feet tall

and weighs between 145 and 160 pounds, but there are smaller 3-foot cylinders that weigh about 8½ pounds (we assume the reference is to an empty cylinder). Typically, Helget uses a two-wheeler to move the larger cylinders and a four-wheeled cart to move the smaller cylinders. Helget's policy is that its employees are to use the two-wheelers and four-wheeled carts to lift and move the gas cylinders.

During the morning on February 18, 2002, Jeffrey and Weidner loaded Jeffrey's delivery truck with gas cylinders and then Weidner's assistant inventoried Jeffrey's load. As Jeffrey pulled away from the loading dock, some of the cylinders fell over in the truck. According to Weidner's testimony, Jeffrey and Weidner's assistant picked up the cylinders and restrapped them to the truck's wall. Weidner further testified that in the afternoon of the same day, Jeffrey hit a parked car with his truck in a parking lot, and that Weidner came to the scene of the accident. Weidner testified that Jeffrey told him he was "all right." Weidner had Jeffrey take a drug test per company policy and sent him home. The drug test was negative, although we note that the record does not reveal which drugs were screened.

The next day, Jeffrey resumed his regular work schedule. Between February 19 and March 8, 2002, Jeffrey called in sick once. Also between February 19 and March 8, Weidner approached Jeffrey about his job performance, and Weidner testified that Jeffrey explained that he had had a rough couple of weeks with the "accident and everything."

However, Jeffrey had visited his physician, Dr. Kurt V. Gold, on February 21, 2002, and according to Dr. Gold's records, Jeffrey said that he did significant lifting of gas cylinders earlier in the week—which activity required bending, twisting, and lifting—and that he was in a minor car accident. Dr. Gold evaluated Jeffrey and concluded that Jeffrey's then-current back problem was a work-related aggravation of his preexisting low-back condition. Dr. Gold prescribed a fentanyl lozenge and a fentanyl patch for Jeffrey's aggravated back injury.

On February 25, 2002, Weidner observed Jeffrey wearing a back brace at work. According to Weidner's testimony, Jeffrey informed him that his back was a "little tight" and that the back brace had nothing to do with Helget.

Then on March 8, 2002, Weidner met with Jeffrey, but the only account of that meeting is found in Weidner's testimony, which we summarize. Jeffrey decided to resign his position effective March 8. During this meeting, Jeffrey started talking about the events of the previous month and informed Weidner that he had been wearing his back brace under his uniform and that he had been using "morphine suckers" for the pain, which medication other evidence shows to have been fentanyl lozenges. Jeffrey inquired about the possibility of something work-related coming up after his resignation that resulted from his time at Helget, and Weidner stated that "if there was a problem because of his employment here, [Helget] would do what was required." Jeffrey signed a form from Helget which said that he was leaving his employment by mutual agreement because of health concerns as well as productivity issues. Helget offered Jeffrey 2 weeks of severance pay, and the final check was to be issued on April 1.

Later on the same day that Jeffrey resigned, Dr. Gold evaluated him and wrote in his notes that it was unfortunate Jeffrey's employment with Helget had ended and that Dr. Gold would appeal to Jeffrey's employer to "reconsider under these circumstances and to contact [Dr. Gold] personally if [Helget] has any questions or concerns regarding [Jeffrey's] condition." Dr. Gold also wrote that he wanted to see Jeffrey again for a progress review in 4 weeks, which would have been in April 2002.

After resigning, Jeffrey contacted Weidner about job references and the possibility of returning to work at Helget. Approximately 7 days after resigning, Jeffrey met with the owner of Helget in his office. Jeffrey inquired about getting his job back, and the owner said that he asked Jeffrey about his back, to which Jeffrey responded that he could do the job as required.

On April 4, 2002, Dr. Gold evaluated Jeffrey. Dr. Gold noted that Jeffrey had increased pain in his back and that Jeffrey had "attempted to go off" the fentanyl patch, but without success. On April 19, Helget's workers' compensation insurance carrier issued a payment for temporary total disability benefits in the amount of $1,840.02 for 6 weeks (March 22 through May 2, 2002). The temporary total disability payments continued until December 4, 2003. On December 24, Jeffrey filed his petition for temporary and permanent total disability benefits, payment

of medical care expenses, and vocational rehabilitation benefits. Jeffrey continued to see various physicians regarding his back pain who prescribed various pain medicines including OxyContin and Lortab. Jeffrey was also evaluated by a psychiatrist, Dr. Mark J. Diercks, who wrote in his notes that Jeffrey had been treated with antidepressants by his primary care physicians for the past 5 years and was on antidepressants as of February 20, 2003, when Dr. Diercks evaluated Jeffrey. According to Dr. Diercks' notes, Jeffrey experienced seizures because of his antidepressant medication. Dr. Diercks concluded that Jeffrey was depressed. Jeffrey died on March 13, 2004. Jeffrey's surviving wife, Pamela, revived Jeffrey's action. The parties stipulated at trial that Jeffrey died on March 13 as a result of drug toxicity.

## PROCEDURAL BACKGROUND

After the trial on November 29, 2004, the compensation court trial judge found that Jeffrey had suffered an injury on February 18, 2002, arising out of and in the course of his employment but that he failed to give to his employer notice of his injury as soon as practicable and that therefore, his claim was barred under § 48-133. Pamela filed an application for review, and on November 18, 2005, the compensation court three-judge review panel affirmed the trial judge's order of dismissal.

Pamela appealed the decision of the review panel, and at the time that Pamela filed her brief, she failed to file a notice of a constitutional question with respect to § 48-133. On April 17, 2006, she filed a motion for enlargement of time to file the notice of constitutional question. The Supreme Court denied such motion, and accordingly, no issue of the constitutionality of a statute is involved in the appeal. Thus, the case remains on our docket.

## ASSIGNMENTS OF ERROR

Pamela asserts, reordered and restated, that the trial court erred by (1) finding that the deceased failed to report his injury as soon as practicable after the accident, (2) allocating to Pamela the burden of proving that the deceased's fatal ingestion of narcotic drugs was not willful negligence, (3) finding that the deceased's fatal ingestion of narcotics constituted willful negligence, and (4) assuming that as a matter of law, the

intentional ingestion of narcotic drugs by the deceased was willful negligence.

## STANDARD OF REVIEW

An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court did not support the order or award. *Morris v. Nebraska Health System*, 266 Neb. 285, 664 N.W.2d 436 (2003). Upon appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Id.* An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Id.*

## ANALYSIS

*Notice and Knowledge of Injury.*

We first deal with the question of notice under § 48-133. The Nebraska Workers' Compensation Act is intended to provide benefits for employees who are injured on the job, and the terms of the act are to be broadly construed to accomplish the beneficent purposes of the act. *Soto v. State*, 269 Neb. 337, 693 N.W.2d 491 (2005). Section 48-133 provides:

No proceedings for compensation for an injury under the Nebraska Workers' Compensation Act shall be maintained unless a notice of the injury shall have been given to the employer as soon as practicable after the happening thereof; *Provided*, that all disputed claims for compensation or benefits shall be first submitted to the Nebraska Workers' Compensation Court. The notice shall be in writing and shall state in ordinary language the time, place, and cause of the injury. . . . *Want of such written notice shall not be a bar to proceedings under the Nebraska Workers' Compensation Act, if it be shown that the employer had notice or knowledge of the injury.*

(Emphasis supplied.) "The purposes of the notice requirement are '[f]irst, to enable the employer to provide immediate medical

diagnosis and treatment with a view to minimizing the serious-
ness of the injury; and second, to facilitate the earliest possible
investigation of the facts surrounding the injury.'" *Williamson
v. Werner Enters.*, 12 Neb. App. 642, 648, 682 N.W.2d 723, 728
(2004), quoting 7 Arthur Larson & Lex K. Larson, Larson's
Workers' Compensation Law § 126.01 (2003). Section 48-133
provides an exception to the written notice rule if it can be shown
that the employer had notice or knowledge of the injury. The
nature and extent of such notice or knowledge has been artic-
ulated by the Nebraska Supreme Court as follows: "Section
48-133 contemplates a situation where an employer has *notice or
knowledge sufficient to lead a reasonable person to conclude
that an employee's injury is potentially compensable* and that,
therefore, the employer should investigate the matter further."
(Emphasis supplied.) *Scott v. Pepsi Cola Co.*, 249 Neb. 60, 65,
541 N.W.2d 49, 53 (1995), citing *Thompson v. Monfort of
Colorado*, 221 Neb. 83, 375 N.W.2d 601 (1985). Knowledge of
an employee's injury gained by the employee's foreman, super-
visor, or superintendent in a representative capacity for an em-
ployer is knowledge imputed to the employer and notice to an
employer sufficient for the notice requirement of § 48-133.
*Thompson, supra.* Moreover, notice to the insured-employer is
binding on the insurer. See, Neb. Rev. Stat. § 48-146 (Supp.
2005); *Miller v. Commercial Contractors Equip.*, 14 Neb. App.
606, 711 N.W.2d 893 (2006). But here, the reverse situation is
present, because the evidence shows that the insurer paid tem-
porary total disability benefits within 2 months of the alleged
accident, and thus, the insurer obviously had notice and knowl-
edge of a claim within 2 months—and likely less than 2 months,
given the need for some amount of "processing time" between
notice of a claim and issuance of a first payment of benefits. In
any event, we hold that for notice or knowledge purposes under
§ 48-133, the employer equates to the insurer, and vice versa.

▪ The compensation court found that based upon the tes-
timony of Dr. Gold and the office visit he had with Jeffrey on
February 21, 2002, Jeffrey suffered an "injury bending and lift-
ing containers of various gases on February 18, 2002, arising out
of and in the course of his employment." Helget does not cross-
appeal this finding, and thus it is now the "law of the case." See

*State v. White*, 257 Neb. 943, 601 N.W.2d 731 (1999) (law-of-the-case doctrine operates to preclude reconsideration of substantially similar, if not identical, issues at successive stages of same suit).

We examine the information that Helget had between February 18 and April 19, 2002, regarding the incident on February 18 and Jeffrey's accompanying back injury. We use the date of April 19, because on such date, Jeffrey was paid temporary total disability benefits via a check from Helget's insurance carrier. Thus, indisputably, Helget and its insurer had notice of Jeffrey's claim absolutely no later than April 19, and likely sooner, in order to generate the referenced payment. Unfortunately, the evidence does not shed any light on what would be helpful information about how the insurer came to issue the April 19 payment, as well as the crucial dates involved in the issuance of the check.

However, returning to what is in the record, we know from Weidner's testimony that Helget knew that Jeffrey lifted gas cylinders in the morning and was in a car accident in the afternoon on February 18, 2002. Helget also knew that Jeffrey wore a back brace to work on February 25. Less than 3 weeks after the incidents on February 18, the employer understood that Jeffrey was resigning and that health concerns were a reason for such resignation. Helget further knew that during the resignation meeting, Jeffrey talked about the events of the previous month and informed Weidner that Jeffrey had been wearing his back brace under his uniform and had been using "morphine suckers." Additionally, Helget knew that Jeffrey had concerns about the possibility of something work-related coming up after his resignation that resulted from his time at Helget, and in response to Jeffrey's voicing his concerns, Weidner told him that "if there was a problem because of his employment [at Helget], [Helget] would do what was required." Helget also knew that Jeffrey would receive his last paycheck on April 1.

The compensation court found that Jeffrey failed to report to Helget his February 18, 2002, injury as soon as practicable, thus barring the claim under § 48-133. However, neither the trial judge nor the review panel analyzed the notice issue using the rubric, as articulated by the Supreme Court in *Scott v. Pepsi*

*Cola Co.*, 249 Neb. 60, 541 N.W.2d 49 (1995), for determining whether the employer's notice or knowledge was sufficient. Instead, the trial judge and the review panel relied solely on a decision of this court, *Williamson v. Werner Enters.*, 12 Neb. App. 642, 682 N.W.2d 723 (2004), a case which is distinguishable in a number of respects, as we shall later discuss. Under *Scott*, the crucial question in the instant case is whether Helget had knowledge sufficient to lead a reasonable person to conclude that Jeffrey's back condition was potentially compensable and that an investigation was required. In *Scott*, the Supreme Court held that when the facts concerning reporting and notice are not disputed, whether such facts constitute sufficient notice to the employer under § 48-133 is a question of law. An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Scott, supra.*

The following facts are undisputed: Helget had immediate knowledge of the two incidents on February 18, 2002, plus knowledge within a week thereafter that Jeffrey had begun using a back brace. Furthermore, after the two incidents, Helget knew that Jeffrey worked less than 3 weeks before his resignation, which was in part due to his health concerns, and that he was concerned about what work-related issues might arise after his resignation. Helget's workers' compensation insurance carrier issued a check on April 19 paying Jeffrey temporary total disability benefits for the time period of March 22 through May 2, 2002. This payment must be viewed as if Helget itself issued the check, and of course, knowledge of the claim sufficient to trigger the issuance of the check obviously occurred sometime prior to the date of the check—although the record before us is deficient because it does not disclose how and when the insurer was notified of Jeffrey's claim so as to trigger the issuance of the April 19 check. These core facts are undisputed, but it is noteworthy that because Jeffrey is deceased, we have only the testimony of Helget's employees about what Jeffrey said. Nonetheless, the central fact remains that the workers' compensation insurer for Helget made payment of benefits within 2 months of the claimed accident date.

We are aware that voluntary payments of workers' compensation benefits do not constitute an admission of liability

by an employer. *McBee v. Goodyear Tire & Rubber Co.*, 255 Neb. 903, 587 N.W.2d 687 (1999). Nonetheless, the fact of such a payment clearly tends to prove that the employer or insurer had knowledge and notice of the claimed compensable injury, a different question than whether the employee sustained a compensable injury. In Professor Larson's treatise, he explains that "actual payment of compensation or provision of medical care is usually held to dispense with the necessity of notice of injury" and that "[t]his result follows naturally from the rule on actual knowledge, since the employer could hardly claim ignorance of the injury toward which it is contributing such payments." 7 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 126.03[4] (2006). See, also, *Gilbert v. Metropolitan Utilities Dist.*, 156 Neb. 750, 57 N.W.2d 770 (1953), citing *Royal Co. v. Industrial Com.*, 88 Colo. 113, 293 P. 342 (1930). Therefore, we consider the April 19, 2002, benefits payment for that limited purpose, noting that no objection was made to such evidence by Helget.

After our independent review of the foregoing undisputed facts, we conclude as a matter of law that a reasonable employer, with the knowledge Helget possessed, would conclude both that a potential workers' compensation claim existed and that it should investigate the matter. It is important to point out that under *Scott v. Pepsi Cola Co.*, 249 Neb. 60, 541 N.W.2d 49 (1995), the question is not whether Helget had notice or knowledge that Jeffrey's claim was valid or compensable, or even whether Jeffrey thought he had a compensable claim. Instead, the question is whether Helget knew enough that a reasonable employer would conclude, "This employee potentially has a workers' compensation claim and we had better investigate." Given the issuance of the April 19, 2002, check, Jeffrey obviously gave notice and made a claim before that date—although how long before, we cannot know from this record.

Next, we contrast this case with the only reported Nebraska case finding that any claim for benefits was barred for not giving notice "as soon as practicable" under § 48-133. See *Williamson v. Werner Enters.*, 12 Neb. App. 642, 682 N.W.2d 723 (2004). In *Williamson*, the compensation court found that the injured employee waited approximately 5 months to give his employer

notice, and our colleagues deferred to the compensation court's factual findings while saying that such delay exceeded "the outer limit of any reasonable delay." *Id.* at 653, 682 N.W.2d at 732. The *Williamson* court discussed the applicable standard of review, referencing the holding of *Scott, supra,* that sufficiency of notice when facts are undisputed becomes a question of law. The *Williamson* court found that the standard was whether the compensation court was clearly wrong because of the presence of a substantial dispute of fact in the evidence—a situation not present here. Additionally, and most importantly, *Williamson* did not involve anything remotely resembling this highly unusual situation where temporary total disability benefits were initially paid within 2 months of the injury and continued for another 84 weeks for a total amount of $30,224.50, plus medical bills were paid in the amount of $27,279.85, and thereafter, the issue of notice was raised. Consequently, for a variety of reasons, we find that *Williamson* is a very different case than the one before us and that it does not control the result here.

In conclusion, we find that the record presents a question of law as to whether § 48-133 bars the claim, because the essential facts are undisputed. As a result, we reach an independent conclusion. In doing so, we rely upon the Nebraska Supreme Court's conceptualization of "notice or knowledge" under § 48-133 as set forth in *Scott, supra.* Therefore, we hold that a reasonable employer would have had sufficient notice and knowledge that Jeffrey's back condition was potentially a compensable injury and that investigation thereof should have been undertaken. Accordingly, we reverse the compensation court's finding that Helget did not have sufficient notice or knowledge and the finding that § 48-133 barred Jeffrey's claim.

*Consequences of Our Reversal.*

Having found that Jeffrey's claim for workers' compensation benefits is not barred, we turn to the matter of what follows from our decision. We begin by noting that the compensation court found that (1) Jeffrey suffered an injury on February 18, 2002, in an accident arising out of and in the course of his employment and (2) Jeffrey failed to give timely notice of his injury to Helget. The compensation court expressly found the remaining issues to be moot. Nevertheless, the compensation court trial

judge's decision says that "the parties may find it helpful to have the Court address the sixth issue," which the pretrial order defined as whether Jeffrey's "death was accidental or an intentional act or the product of willful negligence." The trial judge wrote that Jeffrey "intentionally ingested an overdose of narcotics for the purpose of ending his life," and the judge characterized such act as willful negligence as defined in Neb. Rev. Stat. § 48-151(7) (Reissue 2004), which negligence would bar any recovery of death benefits under the Nebraska Workers' Compensation Act.

On appeal, the review panel affirmed the trial judge's finding as to the lack of notice, but the review panel did not address the cause or legal consequences of the manner of Jeffrey's death and stated that it was "not obligated to engage in an analysis which is not needed to adjudicate the controversy before it," citing *Curry v. Lewis & Clark NRD*, 267 Neb. 857, 678 N.W.2d 95 (2004). The review panel further wrote, "[G]iven the review panel's affirmance of the trial court's finding that [Jeffrey's] claim is barred based upon the absence of notice defense, a discussion of the other alleged errors would be superfluous." Obviously, after our decision on the notice issue, the issues unaddressed by the trial court are not moot; nor can it now be said that the manner and consequences of Jeffrey's death are still "superfluous." On appeal to this court, Pamela assigns as error the trial judge's conclusion that Jeffrey was guilty of willful negligence. However, Helget did not cross-appeal the core finding that Jeffrey had sustained a compensable injury on February 18, 2002. Thus, the questions are whether Jeffrey's injury was a cause of his death and whether his death was caused by willful negligence.

■ An order in a workers' compensation action must satisfy the requirements of rule 11 of the Workers' Compensation Court, which rule provides:

All parties are entitled to reasoned decisions which contain findings of fact and conclusions of law based upon the whole record which clearly and concisely state and explain the rationale for the decision so that all interested parties can determine why and how a particular result was reached. The judge shall specify the evidence upon which

the judge relies. The decision shall provide the basis for a meaningful appellate review.

See, also, *Owen v. American Hydraulics*, 254 Neb. 685, 578 N.W.2d 57 (1998) (finding that failure of trial judge to clearly determine issue precluded meaningful appellate review and thus remanding cause to trial judge). We find that when the trial court addressed only issues 1, 2, and 6 of the pretrial order, the court failed to address Jeffrey's documented depression and corresponding treatment prior to March 13, 2004, as well as the law set forth in *Friedeman v. State*, 215 Neb. 413, 339 N.W.2d 67 (1983) (reasoning that even though employee knew she was inflicting mortal wound upon herself, this will not, in all cases, constitute willful negligence within meaning of statute barring recovery; thus, when employee's injuries result in becoming devoid of normal judgment and dominated by disturbance of mind directly caused by injuries, suicide is not willful under Nebraska Workers' Compensation Act). Thus, the trial judge rendered an opinion on what he characterized as a moot issue, and moreover, the trial judged failed to analyze the issue in light of the controlling precedent. Such holding in these circumstances does not satisfy the requirements of rule 11. Therefore, we vacate the trial court's decision on issue 6 of the pretrial order—whether Jeffrey's death was accidental or an intentional act or the product of willful negligence—and we remand the question for the entry of an order on the evidence adduced which comports with rule 11 with reference to issues 3 through 8 of the pretrial order. See *Hale v. Standard Meat Co.*, 251 Neb. 37, 554 N.W.2d 424 (1996) (remand for new decision by trial judge on evidence adduced when judge did not follow rule 11). The unresolved issues from the pretrial order include the extent of any temporary disability caused by the accident; the liability of Helget for the payment of medical and hospital bills incurred by Jeffrey prior to March 13, 2004; whether the drugs causing the toxicity had been prescribed for a compensable condition; the entitlement of Pamela of any medical bills incurred in connection with the death of Jeffrey on March 13, together with funeral and burial expenses; and whether Genevieve, Jeffrey's child, is and has been actually dependent since March 13. Thus, we remand the cause to the trial court for disposition of all the

issues relating to entitlement to workers' compensation benefits flowing from Jeffrey's work accident on February 18, 2002.

## CONCLUSION

For the foregoing reasons, we reverse the Workers' Compensation Court's dismissal with prejudice, and we remand the cause to the review panel with directions that it remand it to the trial judge for a decision as required by rule 11.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.