Bernard Michie and Dianna Lee Estes, appellants,
v. Anderson Builders, Inc., appellee.
___ N.W.2d ___

Filed February 3, 2015.    No. A-14-200.

1. **Workers' Compensation: Appeal and Error.** On appellate review, the findings of fact made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong.
2. **Workers' Compensation: Evidence: Appeal and Error.** If the record contains evidence to substantiate the factual conclusions reached by the trial judge in workers' compensation cases, an appellate court is precluded from substituting its view of the facts for that of the compensation court.
3. **Workers' Compensation: Appeal and Error.** An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law.
4. **Foreign Judgments: Jurisdiction: States.** A judgment rendered in a sister state court which had jurisdiction is to be given full faith and credit and has the same validity and effect in Nebraska as in the state rendering judgment.
5. **Workers' Compensation: Expert Witnesses.** In order for expert testimony to be admissible in a workers' compensation case, the witness must qualify as an expert, the testimony must assist the trier of fact to understand the evidence or determine a fact in issue, the witness must have a factual basis for the opinion, and the testimony must be relevant.
6. **Workers' Compensation: Evidence: Appeal and Error.** In testing the sufficiency of the evidence to support the findings of fact by the Workers' Compensation Court, the evidence must be considered in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the successful party will have the benefit of every inference that is reasonably deducible from the evidence.
7. **Workers' Compensation: Expert Witnesses.** The trial judge in a workers' compensation case is entitled to accept the opinion of one expert over another.

Appeal from the Workers' Compensation Court: Michael K. High, Judge. Affirmed.

Michael W. Meister for appellants.

Ryan C. Holsten, of Atwood, Holsten, Brown, Deaver & Spier Law Firm, P.C., L.L.O., for appellee.

Moore, Chief Judge, and Riedmann and Bishop, Judges.

Riedmann, Judge.

## INTRODUCTION

Dianna Lee Estes appeals the decision of the Nebraska Workers' Compensation Court, which found that although her husband, Bernard Michie, sustained a workplace injury, his subsequent death was not causally related to his injury. The court awarded indemnity payments, along with medical and hospital expenses incurred to the time of his death, but denied spousal benefits under the Nebraska Workers' Compensation Act. For the reasons set forth below, we affirm.

## BACKGROUND

Michie sustained an injury to his lower back in April 2010 while pouring and leveling wet concrete in the course and scope of his employment with Anderson Builders, Inc. Michie underwent various treatments for the pain associated with his injury from April 2010 until he died unexpectedly in April 2012. At the time of his death, Michie was taking two prescription medications related to his workplace injury: oxycodone for pain and cyclobenzaprine as a muscle relaxant. Prior to his death, Michie initiated this action, seeking indemnity and medical benefits under the Nebraska Workers' Compensation Act. Following his death, Michie's widow, Estes, filed an amended petition, seeking spousal benefits as well as funeral and burial expenses. She alleged that Michie died as a result of an accidental overdose of the medications he was prescribed for his workplace injury and that she was therefore entitled to death benefits.

A trial was held in the compensation court. Estes offered various exhibits, including Michie's post mortem toxicology test results, an autopsy report, and the verdict of the coroner from Laramie County, Wyoming, which is the location where Michie died. The toxicology test results showed the presence of both prescription drugs in Michie's blood at the time of his death. The concentration of oxycodone was 27 nanograms per milliliter, and the concentration of cyclobenzaprine was 60 nanograms per milliliter.

The autopsy report was prepared by Dr. James A. Wilkerson IV, a forensic pathologist. Dr. Wilkerson's conclusion as to

the cause of Michie's death is stated in the autopsy report as follows:

> Based upon the history and autopsy findings, it is my opinion that . . . Michie, a 49-year-old White male, had no definitive cause of death. History, scene findings, pulmonary edema and a full bladder, along with the toxicology findings, suggest multiple drug intoxication as the most likely cause of death. Prolonged metabolism while in a comatose but ultimately fatal state resulted in reduced levels of the drugs. The manner of death is undetermined.

The Laramie County coroner conducted an investigation and determined the cause of Michie's death to be "mixed drug toxicity due to an overdose of his prescribed medications." He determined the manner of death to be "accidental."

Anderson Builders presented expert testimony of Dr. John Vasiliades, a board-certified clinical chemist, toxicologist, and forensic toxicologist. Dr. Vasiliades is currently employed as a laboratory director and toxicologist at a toxicology laboratory in Omaha, Nebraska. He holds both a bachelor's degree and a doctorate degree in chemistry, and he has completed fellowships in chemistry and toxicology. He has qualified hundreds of times in state and federal court as a toxicology and forensic toxicology expert. However, Dr. Vasiliades is not a licensed physician or medical care provider.

Before rendering an opinion in this matter, Dr. Vasiliades reviewed Michie's medical records, the autopsy report, the toxicology test results, and the death investigation report and verdict of the Laramie County coroner. Dr. Vasiliades was aware, based on his review of the records, that Michie had a history of back pain and had been taking 30 milligrams each of oxycodone and cyclobenzaprine daily for a long period of time.

Dr. Vasiliades testified that he is familiar with both of these prescription drugs and their effects on the human body. He testified that the concentrations of the two drugs found in Michie's blood at the time of his death were in the therapeutic, or even "subtherapeutic," range. The level of oxycodone in Michie's blood was only 27 nanograms per millileter,

which is consistent with what Dr. Vasiliades would expect for someone who was taking 30 milligrams of the drug per day. He explained that in order for oxycodone to become toxic, it must be in excess of 600 nanograms per milliliter. Regarding cyclobenzaprine, Dr. Vasiliades testified that it becomes toxic at levels in excess of 300 nanograms per milliliter, and Michie's blood sample contained only 60 nanograms per milliliter.

Given that the concentrations of the drugs in Michie's blood were so low, Dr. Vasiliades opined that the drugs "certainly" did not cause Michie's death. He explained that neither drug concentration was high enough to cause death individually or in combination with one another, especially given that Michie was a chronic user and could likely withstand much higher concentrations of the drugs.

When questioned about the possibility that Michie had an adverse or allergic reaction to the drugs, Dr. Vasiliades explained that such reactions would have occurred within the first few times of taking the drugs. Because Michie had been taking the drugs over a long period of time, Dr. Vasiliades opined that Michie's death was not caused by an adverse or allergic reaction to either medication.

The compensation court awarded indemnity and medical benefits for the back injury, but denied spousal benefits to Estes based on its finding that she failed to meet her burden of proving a causal link between Michie's death and his workplace injury. It found that Dr. Wilkerson's report as to the cause of death was conclusory in nature and not based upon toxicological science. It accepted the opinion of Dr. Vasiliades that the concentrations of oxycodone and cyclobenzaprine were well within the therapeutic range at the time of Michie's death and did not cause his death.

Both Estes and Michie are named in the timely filed notice of appeal, but for ease of discussion, we will refer to Estes as the sole appellant.

## ASSIGNMENTS OF ERROR

Estes assigns three errors on appeal: (1) The compensation court erred in failing to give full faith and credit to the verdict

of the Laramie County coroner, as required by U.S. Const. art. IV, § 1; (2) the compensation court erred when it allowed Dr. Vasiliades, a forensic toxicologist with no medical training, to testify on matters of causation over Estes' objection, contrary to Nebraska law requiring medical testimony on causation in workers' compensation cases; and (3) the compensation court erred in failing to find that the medication prescribed to Michie caused or contributed to his death and that Estes was entitled to workers' compensation benefits.

## STANDARD OF REVIEW

[1-3] On appellate review, the findings of fact made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Clark v. Alegent Health Neb.*, 285 Neb. 60, 825 N.W.2d 195 (2013). If the record contains evidence to substantiate the factual conclusions reached by the trial judge in workers' compensation cases, an appellate court is precluded from substituting its view of the facts for that of the compensation court. *Id*. An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Id*.

## ANALYSIS

### Full Faith and Credit to Coroner's Verdict

Estes first assigns that the compensation court erred in failing to give full faith and credit to the verdict of the Laramie County coroner, as required by U.S. Const. art. IV, § 1. We disagree.

[4] A judgment rendered in a sister state court which had jurisdiction is to be given full faith and credit and has the same validity and effect in Nebraska as in the state rendering judgment. *In re Trust Created by Nixon*, 277 Neb. 546, 763 N.W.2d 404 (2009). We do not believe the verdict issued by the Laramie County coroner is a "judgment" entitled to full faith and credit. But even if it were, the Full Faith and Credit Clause would require our courts to give it the same validity and effect that it would have in Wyoming. See *In re*

*Trust Created by Nixon, supra*. Estes has not pointed to any Wyoming law indicating what validity and effect a coroner's verdict is given in Wyoming. According to our research, a coroner's verdict is merely advisory and has no probative effect under Wyoming law. See *Raigosa v. State*, 562 P.2d 1009 (Wyo. 1977).

Because the coroner's verdict would not have been conclusive evidence in Wyoming courts as to Michie's cause of death, the Full Faith and Credit Clause does not require that it be given such effect in our courts. Thus, the compensation court was entitled to consider and weigh the credibility of the coroner's verdict, just as any other piece of evidence received at trial. This assignment of error has no merit.

## Testimony on Cause of Death

For her second assignment of error, Estes asserts that the compensation court erred by allowing Dr. Vasiliades, a forensic toxicologist with no medical training, to testify on matters of causation, contrary to Nebraska law requiring medical testimony to prove causation. She argues, therefore, that the compensation court should have sustained her objections to Dr. Vasiliades' testimony on the basis of foundation and relevance.

In support of her argument, Estes relies upon *Mendoza v. Omaha Meat Processors*, 225 Neb. 771, 780, 408 N.W.2d 280, 286 (1987), which states:

> "'"Where the claimed injuries are of such a character as to require skilled and professional persons to determine the cause and extent thereof, the question is one of science. Such a question must necessarily be determined from the testimony of skilled professional persons and cannot be determined from the testimony of unskilled witnesses having no scientific knowledge of such injuries." The employee must show by *competent medical testimony* a causal connection between the alleged injury, the employment, and the disability.' . . ."

(Emphasis supplied.)

[5] We do not believe this case supports Estes' argument. The fact that a plaintiff is required to show causation through

competent medical testimony does not mean that nonmedical expert testimony is inadmissible. In order for expert testimony to be admissible in a workers' compensation case, the witness must qualify as an expert, the testimony must assist the trier of fact to understand the evidence or determine a fact in issue, the witness must have a factual basis for the opinion, and the testimony must be relevant. See *Paulsen v. State*, 249 Neb. 112, 541 N.W.2d 636 (1996). We note that scientific testimony, rather than medical testimony, has been considered in a prior workers' compensation case for purposes of determining causation. See *Ward v. City of Mitchell*, 224 Neb. 711, 400 N.W.2d 862 (1987).

Here, although Dr. Vasiliades is not a medical expert, he is certainly qualified as an expert in the science of toxicology. He has a bachelor's degree and doctorate degree in chemistry, and he completed fellowships in chemistry and toxicology. He is board certified in clinical chemistry, toxicology, and forensic toxicology, and is currently employed as a toxicologist at a toxicology laboratory. He has qualified hundreds of times in state and federal courts as a toxicology and forensic toxicology expert.

Dr. Vasiliades reviewed Michie's medical records, the autopsy report, and the post mortem blood test results, which provided the proper factual foundation for his opinion. His testimony was certainly helpful to the trier of fact in understanding the toxicology reports and whether the concentration of prescription drugs found in Michie's blood could have caused his death. Dr. Vasiliades' opinion that the concentration of those drugs was therapeutic, rather than toxic, was relevant to the issue before the court: whether the prescription drugs contributed to or caused Michie's death.

Because Dr. Vasiliades' testimony was both relevant and supported by proper foundation, the compensation court did not err in admitting it as expert testimony. This assignment of error is without merit.

## Denial of Spousal Benefits

Finally, Estes asserts the compensation court erred in failing to find that the medications prescribed for Michie's workplace

injury contributed to his death and that therefore, Estes was entitled to workers' compensation benefits.

[6] A factual determination by the Nebraska Workers' Compensation Court will not be set aside on appeal unless such determinations are clearly erroneous. *Aken v. Nebraska Methodist Hosp.*, 245 Neb. 161, 511 N.W.2d 762 (1994). In testing the sufficiency of the evidence to support the findings of fact by the Workers' Compensation Court, the evidence must be considered in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the successful party will have the benefit of every inference that is reasonably deducible from the evidence. *Rader v. Speer Auto*, 287 Neb. 116, 841 N.W.2d 383 (2013).

Here, the compensation court found that Estes failed to meet her burden of proving a causal link between Michie's workplace injury and his subsequent death. In reaching this conclusion, the court rejected Dr. Wilkerson's opinion as to the cause of death and instead accepted the opinion of Dr. Vasiliades that the concentrations of oxycodone and cyclobenzaprine were well within the therapeutic range and did not cause Michie's death. We conclude that the record contains sufficient evidence to support these findings.

Estes argues on appeal that a causal link was established because the only medications found in Michie's body at the time of his death were the medications prescribed to treat his workplace injury. However, the presence of the medications alone is not enough to establish a causal link between the injury and the death. Although Dr. Wilkerson believed that "multiple drug intoxication" was the "most likely cause of death," Dr. Vasiliades testified that the concentration of those drugs was therapeutic, rather than toxic, and could not have caused Michie's death.

[7] The trial judge in a workers' compensation case is entitled to accept the opinion of one expert over another. See *Lowe v. Drivers Mgmt., Inc.*, 274 Neb. 732, 743 N.W.2d 82 (2007). We will not substitute our findings of fact for those of the compensation court when its findings are substantiated

by the record. See *Clark v. Alegent Health Neb.*, 285 Neb. 60, 825 N.W.2d 195 (2013). This assignment of error has no merit.

## CONCLUSION

For the reasons set forth above, we affirm the decision of the compensation court.

AFFIRMED.

---

Graylin Gray, appellant, v. Michael Kenney,
director of Nebraska Department of
Correctional Services, appellee.
___ N.W.2d ___

Filed February 3, 2015.    No. A-14-378.

1. **Affidavits: Appeal and Error.** An appellate court reviews a district court's denial of in forma pauperis status under Neb. Rev. Stat. § 25-2301.02 (Reissue 2008) de novo on the record based on the transcript of the hearing or the written statement of the court.
2. **Constitutional Law: Judgments.** Except in those cases where the denial of in forma pauperis status would deny a defendant his or her constitutional right to appeal in a felony case, Neb. Rev. Stat. § 25-2301.02(1) (Reissue 2008) allows the court on its own motion, or upon objection by any interested party, to deny in forma pauperis status on the basis that the legal positions asserted by the applicant are frivolous or malicious.
3. **Actions: Words and Phrases.** A frivolous legal position pursuant to Neb. Rev. Stat. § 25-2301.02 (Reissue 2008) is one wholly without merit, that is, without rational argument based on the law or on the evidence.
4. **Habeas Corpus: Judgments: Collateral Attack.** Under Nebraska law, an action for habeas corpus is a collateral attack on a judgment of conviction.
5. **Judgments: Collateral Attack.** Only a void judgment may be collaterally attacked.
6. **Judgments: Jurisdiction: Collateral Attack.** Where the court has jurisdiction of the parties and the subject matter, its judgment is not subject to collateral attack.
7. **Habeas Corpus: Jurisdiction: Sentences.** A writ of habeas corpus will not lie to discharge a person from a sentence of penal servitude where the court imposing the sentence had jurisdiction of the offense and the person of the defendant, and the sentence was within the power of the court to impose.
8. **Habeas Corpus.** A writ of habeas corpus is not a writ for correction of errors, and its use will not be permitted for that purpose.